Syllabus.

C. S. FIFIELD *et al.*

*v.*

THE FARMERS' NATIONAL BANK *et al.*

*Filed at Ottawa November 29, 1893.*

1. FIXTURES—*machinery attached to building.* Machinery fastened to the floor, or plank nailed to the floor of a building erected for a shoe manufactory, by large screws, and belted to the shafting overhead, or fastened to benches by wooden screws and belted to the shafting, the benches being nailed to the floor, intended to form a part of the plant, when such machinery was placed in the building for the purpose of manufacturing shoes, and essential to the plant, is a fixture, and as such will pass by deed or mortgage of the ground on which the building is erected.

2. SAME—*rules for determining whether machinery constitutes fixtures.* The rule for determining what are to be regarded as fixtures is as follows: First, real or constructive annexation of the thing in question to the realty; second, appropriation or adaptation to the use or purpose of that part of the realty with which it is connected; and third, the intention of the party making the annexation to make it a permanent accession to the freehold, this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation and the policy of the law in relation thereto, the structure and mode of the annexation, and the purpose or use for which the annexation has been made.

3. Of these tests the clear tendency of the authorities seems to be to give pre-eminence to the question of intention to make the article a permanent accession to the freehold, and the others seem to derive their chief value as evidence of such intention.

4. It is in the power of the owner of the freehold to affix any property to it he pleases, and when he does so, it becomes a fixture in the general sense of that term, and part of the freehold, and if the inheritance be afterwards sold or mortgaged, the fixture goes with the freehold.

5. SAME—*character of annexation not changed by the secret agreement of parties.* The private agreement of the owner of a building erected for a manufactory, with the party furnishing him machinery to be attached to such building, that the machinery shall remain the property of the vendor until paid for, will not change the character of the property, so far as the rights of mortgagees or other lienholders are concerned.

148  163
 61a 464

148  163
 65a 629

148  163
166  386

148    163
 96a  174
 98a  578

148    163
198    36

148    163
104a  120

6. Articles placed in a mill or factory by the owner to carry out the obvious purpose for which it was erected, and adapted to that purpose, are generally part of the realty, notwithstanding the fact that they may be removed and used elsewhere.

7. SAME—*effect of creditor taking chattel mortgage.* The fact that a creditor of a party owning a shoe factory may have taken a chattel mortgage upon the fixtures of the factory building, will not affect his rights under a deed of trust of the realty subsequently taken to secure the same debt. In such case, if the property is a fixture, the latter will pass under the deed of trust as part of the realty.

8. SALE—*secret lien as against third persons.* On the sale of a chattel, where the possession of the property passes to the purchaser, a secret lien in favor of the vendor is not valid against creditors or subsequent purchasers.

9. NOTICE—*of contents of a deed from the record thereof.* A deed under which a party acquired title to certain town lots, upon which he erected a shoe factory building, provided that the building, improvements and machinery to be placed on the lots should not be torn down or removed from the premises by the grantee for a period of at least five years, and that the lots should be used for manufacturing purposes, alone, and the deed was duly recorded : *Held,* that the recording of such deed was notice to a party who furnished machinery to be attached to the building, of the fact that the machinery was to be attached to the realty, and would become a part thereof.

APPEAL from the Appellate Court for the Second District ;— heard in that court on appeal from the Circuit Court of Bureau county ; the Hon. DORRANCE DIBELL, Judge, presiding.

On July 1, 1891, Robert Montgomery and nine other residents of Wyanet, in Bureau county, entered into a written contract with Robert Day, by which they agreed to convey to him lots 13, 14, 15 and 16, in block 20, in Brown's addition to said village, and pay him $6000, and in consideration thereof Day, on his part, agreed to erect on the lots a factory building 40x100 feet, two stories high, and to put in the necessary machinery and equip the same for a shoe factory, the deed to provide that the building and machinery to be placed thereon should not be torn down or removed therefrom for five years. On July 15, 1891, Orson K. Tuttle, in whom the title was vested, and his wife, by their deed of that date, conveyed said

lots 13, 14, 15 and 16 to said Robert Day, which deed was filed for record in the recorder's office of said Bureau county on July 25, 1891. The deed, as required by the terms of the contract, contained this provision: "This deed is made in pursuance of an agreement with the grantee and Robert Montgomery, (and nine others,) dated July 1, 1891, in relation to the erection and maintenance of a shoe factory in the village of Wyanet, and it is executed upon the express condition, and as a part of the consideration for this conveyance, that the building, improvements and machinery to be placed on said lots shall not be torn down or removed from said premises by said grantee or his assigns for the space of at least five years from said first day of July, A. D. 1891, and that said lots shall be used for manufacturing purposes alone."

For the purpose of getting the factory ready for manufacturing, in the month of September, 1891, Day purchased of the appellants a large quantity of machinery to be placed in the building. The machinery was sold on a credit of thirty, sixty and ninety days, with a provision in the contract of sale that the machinery should remain the property of C. S. Fifield & Co., the vendors, until paid for. The machinery was shipped to Day and placed in the factory, being attached to the floor or benches by large screws, and belted to the shafting overhead. The machines were made of iron, and some of them weighed from eight hundred to eleven hundred pounds. Cast holes were made in the legs, so that the screws could be inserted in order to screw the machinery to the floor of the building, and belt wheels were placed on the machines so they could be attached by belts to the shafting. The machinery was placed in the plant to be used in the manufacturing of shoes, and with the intention that it should remain therein as a part of the plant.

Day started his factory, but it was only in operation a short time when the concern was found to be insolvent. The appellants having received no payment on the machinery sold, on

November 24, 1891, commenced an action of replevin to re-
cover the machinery which they had sold.   On November 23,
1891, Day, being indebted to appellee the Farmers' National
Bank of Princeton, executed a trust deed on the lots upon
which the factory was erected, to secure the bank.   In the
month of December judgments were entered against Day in
favor of a large number of creditors. · Before the machinery
had been taken on the writ of replevin sued out by the appel-
lants, the Farmers' National Bank of Princeton filed a bill in
equity claiming a lien on the lots and machinery, as fixtures,
under the trust deed which Day had executed.   The appel-
lants and the various creditors of Day were made parties to
to this proceeding.   A receiver was appointed to take charge
of the property, and on a final hearing, on the pleadings and
evidence, the court held that the machinery sold by appellants
were fixtures, and appellants had no lien thereon.   The prop-
erty was ordered sold, and the proceeds divided among the
creditors.

Messrs. ALDRICH, PAYNE & DEFREES, for the appellants:

The fact whether the title passes on a sale of chattels de-
pends upon the intention of the parties.   Benjamin on Sales,
(4th ed.) sec. 425, *et seq.*

When goods are sold at a fixed price, to be paid on a cer-
tain day, and delivery has been made upon an agreement,
express or implied, that until the price is paid the title is to
remain in the vendor, payment is a condition precedent, and
until performance the property is not vested in the purchaser;
and the vendor may maintain replevin for the property on
default of payment, without returning any partial payment.
*Fairbanks* v. *Malloy,* 16 Bradw. 281.

As between mortgagor and mortgagee, the weight of modern
authority and reason seem to establish the doctrine that the
true criterion of an irremovable fixture consists in the united
application of several tests :. First, real or constructive an-

nexation of the articles in question to the realty; second, adaptability to the use or purpose of that part of the realty with which it is connected; and third, the intention of the party making the annexation to make the article a permanent accession to the freehold, the intention being inferred from the nature of the articles affixed, the relations and situation of the party making the annexation and the policy of the law in relation thereto, the structure and mode of annexation, and the purpose or use for which the annexation has been made. The question of intention is the prime one, and the other rules are simply evidence of the intention. Ewell on Fixtures, 21, 22; *Jones* v. *Ramsey,* 3 Bradw. 303; *Sword* v. *Low,* 122 Ill. 494.

The bank stands in no better position, by reason of the trust deed, than Day stands, for two reasons: First, because the bank, at the time it took the trust deed, was insisting that it held the property under a chattel mortgage, by which it had agreed it was personal property. If the bank had sought to foreclose the trust deed, the chattel mortgage was an instrument which would have estopped the bank, as against Day, from claiming that this property was real estate. Now, if the bank is estopped as against Day, it is estopped as against us. Then, again, this bank has no more rights under this trust deed than Day had, for these reasons. Conclusively, upon all authorities, as between Day and ourselves, this property is personal, and we are entitled to the possession of it. *Steel Co.* v. *Lathrop,* 36 Ill. App. 249; *Murdock* v. *Gifford,* 18 N. Y. 28; *McConnell* v. *Blood,* 123 Mass. 47; *Keeler* v. *Keeler,* 31 N. J. 181; *Granger* v. *Illinois and Michigan Canal,* 13 Ill. 740.

Mr. OWEN G. LOVEJOY, Mr. RICHARD M. SKINNER, and Mr. GEORGE S. SKINNER, for the appellees:

This court has uniformly held that a vendor can not retain title to the property sold, as against third persons. *March* v. *Wright,* 46 Ill. 488; *Chickering* v. *Bastress,* 130 id. 206; *Lucas*

v. *Campbell,* 88 id. 448; *Latham* v. *Sumner,* 89 id. 233; *Hervey* v. *Locomotive Works,* 93 U. S. 664.

As to whether the machinery attached to the building became a fixture and a part of the freehold, see *Dobschuetz* v. *Holliday,* 82 Ill. 371; *Arnold* v. *Crowder,* 81 id. 57; *Smith* v. *Moore,* 26 id. 392; *Hill* v. *Bank,* 97 U. S. 450; *Porter* v. *Steel Co.* 122 id. 267; *Steel Co.* v. *Lathrop,* 36 Ill. App. 249; *Taylor* v. *Palmer,* 42 Mich. 314; *Dudley* v. *Hurst,* 57 Md. 44; *Pease* v. *George,* 108 Mass. 78; *Potter* v. *Cromwell,* 40 N. Y. 287.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The principal, and, indeed, the only, question of any importance presented by this record is, whether the machinery which Day purchased of appellants and placed in the manufacturing building, as shown by the evidence, became fixtures. If the machinery, when attached to the building, became fixtures and a part of the realty, then such machinery passed to the bank under the trust deed executed by Day, and could not be taken under the writ of replevin sued out by the appellants.

It will be observed that the deed under which Day acquired title to the lots upon which the factory was erected, provided that the building, improvements and machinery to be placed on said lots shall not be torn down or removed from said premises by said grantee or his assigns for the space of at least five years from the first day of July, 1891, and that said lots shall be used for manufacturing purposes alone. This deed was executed July 15, 1891, and recorded July 25, 1891. When, therefore, appellants, in September, 1891, sold machinery to be placed in the building, they had notice of the contents of the deed, and having such notice they knew that the machinery to be placed therein as a part of the plant could not be removed at such time as they might elect, or at the will or pleasure of Day, the purchaser. Moreover, the agent of appellants who sold the machinery was at the fac-

tory between the first and tenth of September after the factory building had been erected, and learned from Day the nature of the contract between him and the people of Wyanet, under which the factory was established, and hence they knew, or at least were ·in law chargeable with knowledge, that the machinery sold by them could not be removed from the factory.

But in addition to the provisions of the deed, the manner in which the machines were placed in the building manifests an intention that they should become fixtures, and remain there as a part of the shoe factory. · Ten of the machines were fastened to the floor, or plank nailed to the floor, by large screws, and belted to the shafting overhead. Six were fastened to benches by wooden screws, and belted to the shafting, the benches having been nailed to the floor of the building. The witness Cass, who had charge of placing the machinery in the factory, testified: "None of the machinery was in at the time I went to Wyanet, and I superintended the placing of all of it, under Day's direction. It was all put in the building for the purpose of manufacturing shoes, and was all used for that purpose a little. The machinery purchased of Fifield was placed in the building for the purpose of manufacturing shoes, and increases the value of the plant. It was essential to the plant as placed there. The machinery is specially adapted to the manufacturing of shoes. Shoes can be manufactured without it, but it is necessary. I was not employed to superintend a factory other than a shoe factory, and when I put the Fifield machinery in the factory it was not with the intention of taking it out."

Ewell on Fixtures states the rule for determining what are to be regarded as fixtures, as follows: "First, real or constructive annexation of the thing in question to the realty; second, appropriation or adaptation to the use or purpose of that part of the realty with which it is connected; third, the intention of the party making the annexation to make it a permanent accession to the freehold, this intention being in-

ferred from the nature of the article affixed, the relation and situation of the party making the annexation and the policy of the law in relation thereto, the structure and mode of the annexation, and the purpose or 'use for which the annexation has been made." The author also says : "Of these tests the clear tendency of modern authority seems to be to give pre-eminence to the question of intention to make the article a permanent accession to the freehold, and the others seem to derive their chief value as evidence of such intention."

In *Arnold* v. *Crowder*, 81 Ill. 56, it was held that platform scales fastened to sills laid upon a brick wall, for weighing stock or grain, as between mortgagor and mortgagee are to be regarded as fixtures belonging to the realty. It is there said : "It is in the power of the owner of the inheritance to affix any property to it he pleases, and when he does so it becomes a fixture in the general sense of the term, and part of the free-hold, and if the inheritance be afterwards sold or mortgaged the fixture goes with the freehold."

In *Dobschuetz* v. *Holliday*, 82 Ill. 371, it was held that a steam engine, machinery and fixtures, attached to the soil by a lessee thereof for the purpose of hoisting coal, including all boxes and other necessary appliances connected therewith, became a part of the lessee's estate therein. In that case it was contended that the engine was personal property, and hence a mechanic's lien could not be enforced, and it was, among other things, said : "Whatever may have been the private agreement of the parties, it is very clear the engine, when set up and attached to the realty, as it was, became a part of the estate the lessee had in the premises. No doubt the parties could agree among themselves they would treat the engine and other fixtures as personalty, but their private agreement could not change the character of the property, so far as third parties were concerned." So here, when the machinery was placed in the factory and became attached, the private agreement made between Day and ap-

pellants, to the effect that the machinery should remain the property of the vendor until paid for, could not change the character of the property, so far as the rights of mortgagees or other lien creditors were concerned. See, also, *Wood* v. *Whelen,* 93 Ill. 153 ; *Thielman* v. *Carr,* 75 id. 385.

*First Nat. Bank of Joliet* v. *Adam,* 138 Ill. 483, is a case in point. There certain real estate and water power were leased, and the lessee erected a paper mill and placed therein all necessary machinery. After the mill was erected and properly equipped with the necessary machinery, the lessee executed a trust deed on the property. The lessee failing to pay the rent, the lessor instituted proceedings to collect, relying on a clause in the lease which provided for the reservation of a valid and first lien to the lessor upon any and all goods, chattels or other property belonging to the lessee, as security for the rent. But it was held that the mill and buildings and machinery all formed a part of the leasehold estate, and were chattels real, and were a proper subject matter of a real estate mortgage, which, when made, creates a valid lien on the property. See, also, *Knapp* v. *Jones,* 143 Ill. 375.

The rule established in this State is fully sustained by the decisions in other States. In *Winslow* v. *Merchants' Ins. Co.* 4 Metc. 306, in discussing the question in regard to what part of the property of a machine shop would pass by a mortgage, the court said "that the steam engine and boilers, and all the engines and frames adapted to be moved and used by the steam engine, by means of connecting wheels, bands or other gearing, as between mortgagor and mortgagee, are fixtures, or in the nature of fixtures, and constitute a part of the realty, * * * and passed by the mortgage." The same doctrine was declared in *Pierce* v. *George,* 108 Mass. 78. It is there said : "Articles placed in a mill by the owner to carry out the obvious purpose for which it was erected, and adapted to that purpose, are generally part of the realty, notwithstanding the fact that they could be removed and used elsewhere." The

same rule has been adopted in Maine: *Parsons* v. *Copeland,* 38 Me. 537. So in Iowa: *Ottumwa Woolen Mill Co.* v. *Howey,* 44 Iowa, 57. Michigan adopts the same rule: *Togle* v. *Palmer,* 42 Mich. 314. See, also, *Taylor* v. *Collins,* 51 Wis. 123, and *Dudly* v. *Hunt,* 67 Md. 44, where the same doctrine is declared.

In *Hill* v. *Farmers' Nat. Bank,* 97 U. S. 450, the question arose whether machinery in a paper mill was part of the realty, and in deciding the case the court, among other things, said: "By placing it in the building, in constructing the mill, every part and parcel of it, as between mortgagor and mortgagee, became a fixture, and a part of the freehold."

*Sword* v. *Low,* 122 Ill. 487, has been cited, and is relied upon by the appellants. In the case cited an engine and boiler attached to the realty were held to be personal property. But upon an examination of the case it will be found that it was agreed between the vendor and purchaser, when the engine and boiler were sold, that the purchaser should execute and deliver a chattel mortgage on the property to secure the payment of the purchase money. In pursuance of this agreement a chattel mortgage was executed and placed upon record, as required by statute, thereby giving notice to third persons that the property was to be regarded as personal property. But here, however, no chattel mortgage was given to appellants. They relied solely upon a secret agreement, made between Day and themselves, that the property should belong to them unless paid for by Day. In the sale of a chattel where the possession of the property passes to the purchaser, a secret lien in favor of the vendor is not valid as against creditors or subsequent purchasers. *Chickering* v. *Bastress,* 130 Ill. 216:

Some importance is attempted to be placed on the fact, in the argument, that appellee the Farmers' National Bank took a chattel mortgage on the property. We do not regard this as an important element in the case. The fact that the bank

may have been advised that the machinery was personal property, and attempted to secure its debt by taking a chattel mortgage thereon, would not impair the validity of the deed of trust or mortgage subsequently executed, nor would the acceptance of a chattel mortgage prevent the bank from re-sorting to any legal remedy it might have to secure its indebtedness. The real question was, whether this machinery, purchased by Day to be placed in the factory, and placed therein as a part and parcel of the plant, became a fixture. If it did, then it became a part of the realty, and was subject to the mortgage executed on the real property. Upon this question, under the authorities, we are satisfied that the machinery, after being attached to the factory, became a part and parcel of the plant, and could not be taken on a writ of replevin.

The judgment will be affirmed.

*Judgment affirmed.*