## Hugo Schumacher et al., Assignees, v. Edward P. Allis Company.

1. CORPORATIONS—*Act Done by Officers of a Corporation as Officers of Another Corporation.*—Persons acting as the officers of two corporations, operated the two as if they were but one company, and as officers of one company, contracted for machinery to be placed and used in the plant of the other, and at a later date as officers of the latter company gave its notes for the purchase price of the machinery.    *Held,* that the authority of the company making the purchase to act for the other company could not be questioned for the purpose of avoiding a clause of the contract authorizing the removal of the machinery in case of nonpayment.

Schumacher v. Edward P. Allis Co.

2. PAYMENT—*When a Note for the Amount Due Will Amount to.*— Taking a note, either of the debtor or of a third person, for a pre-existing debt is not a payment of the debt unless it be expressly agreed that the note is taken in absolute payment, or unless the creditor has parted with the note so as to subject the debtor to double payment.

3. SAME—*Burden of Proof as to, When a Note is Given for the Debt.* —Except in a case where the evidence raises a positive inference of discharge the burden of proof is on the debtor, to show that a note for a pre-existing debt was both given and received as absolute payment.

4. VOLUNTARY ASSIGNMENTS—*Title of the Assignee.*—Under a general assignment, the assignee takes as a mere volunteer, and the property assigned is subject to the same defects of title, equities and liens as when in the hands of the assignor.

5. SAME—*Duty of the Assignee as to the Rights of Mortgagees.*—On an appeal by an assignee, a court of appeal will not interfere with a finding of the trial court in favor of a person claiming property in the hands of such assignee on account of the alleged rights of a mortgagee. It is not for the assignee to set up for the mortgagee rights which he does choose to assert for himself.

6. SALES—*Clause Giving Vendor Right to Seize Property for Non-payment, Valid.*—A clause in contract of sale of machinery giving the vendor the right to remove the machinery in case of non-payment is legal and binding between the parties to the contract even though the machinery be attached to the real estate.

7. FIXTURES—*Whether Real or Personal Property—Agreements.*— Things clearly personal in their nature may retain their character of personality by the express agreement of the parties, although attached to the realty in such a manner that without agreement they would lose that character, provided they are so attached that they may be removed without material injury to the articles themselves or to the freehold.

8. SAME—*Whether Real or Personal Property—Rights of Mortagees.* —If chattels are sold to an owner of real estate on an agreement, that their character as personal property is not to be changed, and that the title is to remain in the vendor until the purchase money is paid, a prior mortgagee of the land can not claim them, although subsequently annexed to the freehold, if they can be removed without material damage to the real estate or to the chattels themselves.

**Petition,** in assignment proceedings. Appeal from the County Court of La Salle County; the Hon. HENRY W. JOHNSON, Judge, presiding. Heard in this court at the December term, 1896. Affirmed. Opinion filed June 26, 1897.

CLARENCE GRIGGS, attorney for appellants.

BREWER & STRAWN, attorneys for appellee.

The giving of a negotiable note in consideration of a simple contract debt does not discharge the contract on which the debt was founded, unless it appears that it was agreed that the note should be taken in absolute payment, or that the creditor has so parted with the note as to subject the debtor to double payment. Hercules Iron Works v. Hummer, Assignee, 49 Ill. App. 598, and authorities collected on page 600; Willhelm v. Schmidt, 84 Ill. 183; Walsh v. Lennon, 98 Ill. 27; Cheltenham Stone and Gravel Company v. Gates Iron Works, 124 Ill. 623.

Except where the evidence raises a positive inference of discharge, the burden of proof is upon the debtor to show that the note was both given and received as an absolute payment. Hercules Iron Works v. Hummer, Assignee, 49 Ill. App. 598; Johnson v. Weed, 9 Johns. 310; Mitchell v. Hockett, 25 Cal. 538; Merrick v. Boury, 4 Ohio St. 60; Haines v. Pearce, 41 Md. 221; Glenn v. Smith, 2 Gill and J. 493; McMurray v. Taylor, 30 Mo. 263.

With great care should a court reach the conclusion that the evidence raises an inference of discharge when the creditor would thereby lose some security which he held before taking the note. Hercules Iron Works v. Hummer, Assignee, 49 Ill. App. 598; Bond v. Liverpool & London Globe Ins. Co., 106 Ill. 654; 3 Randolph on Commercial Paper, Secs. 1513, 1518; 2 Parsons on Notes and Bills, 205; 2 Daniel on Neg. Inst., Sec. 1267.

The doctrine of conditional sales has been repeatedly recognized in this State. Hooven, etc., Co. v. Burdette, Assignee, 153 Ill. 672; Murch v. Wright, 46 Ill. 487; Latham v. Sumner, 89 Ill. 233; Fairbanks v. Malloy, 16 Ill. App. 277; Fleury v. Tufts, 25 Ill. App. 101; Jordan v. Easter, 2 Ill. App. 73; Hercules Iron Works v. Hummer, Assignee, 49 Ill. App. 598.

Heavy machinery may retain its character as personal property by agreement of the parties, when otherwise it would become a part of the realty. Hooven, etc., Co. v. Burdette, Assignee, 153 Ill. 672; Hercules Iron Works v. Hummer, Assignee, 49 Ill. App. 598; Ellison v. Salem Coal

and Mining Co., 43 Ill. App. 120; Sword v. Low, 122 Ill. 487; Lake Superior, etc., Co. v. McCann, 86 Mich. 109; Manwaring v. Jenison, 61 Mich. 117; New Chester Water Co. v. Holly Mfg. Co., 53 Fed. Rep. 19; Merchants' Nat. Bank v. Stanton, 55 Minn. 211; S. C., 59 Minn. 532; Page v. Edwards, 64 Vt. 124; Marshall v. Bacheldor, 47 Kan. 442.

When the premises were mortgaged, before the machinery was put in under a conditional contract, the lien of the contract takes precedence of that of the mortgage, as the machinery was no part of the security taken. Hercules Iron Works v. Hummer, Assignee, 49 Ill. App. 598; Ellison v. Salem Coal and Mining Co., 43 Ill. App. 120; Sword v. Low, 122 Ill. 489; Tifft v. Horton, 53 N. Y. 377; Page v. Edwards, 64 Vt. 124; Manwaring v. Jenison, 61 Mich. 117; Merchants' Nat. Bank v. Stanton, 55 Minn. 211.

Under a general assignment the assignee takes the title as a volunteer, and subject to all liens upon the property to which it was subject in the hands of the assignor. Hooven, etc., Co. v. Burdette, Assignee, 153 Ill. 672; Hercules Iron Works v. Hummer, Assignee, 49 Ill. App. 598; O'Hara v. Jones, 46 Ill. 289; Davis, Cory & Co. v. Chicago Dock Co., 129 Ill. 180; Union Trust Co. v. Trumbull, 137 Ill. 146; Jordan v. Easter, 2 Ill. App. 73, 79; Paddock v. Stout, 121 Ill. 571.

A conditional contract will be enforced as against an assignee, there being no judgment or attaching creditors or *bona fide* purchasers without notice. Hercules Iron Works v. Hummer, Assignee, 49 Ill. App. 598; Union Trust Co. v. Trumbull, 137 Ill. 146; Murch v. Wright, 46 Ill. 487; Hooven, etc., Co. v. Burdette, Assignee, 153 Ill. 672; Thomas Mfg. Co. v. Huff, 62 Mo. App. 124.

When the officers and directors of two corporations are alike, each has notice of the contracts of the other. New Chester Water Co. v. Holly Mfg. Co., 53 Fed. R. 19, 27; Walker v. Grand Rapids Flouring Mill Co., 70 Wis. 92.

Mr. Justice Crabtree delivered the opinion of the Court.

This cause arose upon a petition filed by appellee for leave

to remove certain machinery from premises in the possession of appellants as assignees of the Illinois River Paper Company, The Marseilles Land and Water Power Company and Ferdinand Schumacher.

Upon a hearing in the County Court, the prayer of the petition was granted and leave given to remove the machinery in question, and from such order appellants prosecute an appeal to this court.

From the record we gather the following facts: Some time prior to the year 1895, one Ferdinand Schumacher, a capitalist of Akron, Ohio, became the purchaser of the property and capital stock of the Marseilles Land and Water Power Company, of Marseilles, Illinois, thereby becoming the owner of the water power at that place and also a large amount of real estate, paper mills and other mill property operated by water power at Marseilles. He also acquired the property and capital stock of the Illinois River Paper Company, another corporation located at Marseilles, and thereby became the owner of a large paper mill, which he afterward completed and equipped as a straw board plant, having a large capacity of production.

Hugo Schumacher, a nephew of said Ferdinand, and one of the appellants, appears to have been the confidential agent of the latter at Akron, O., and Richard F. Knott was the superintendent of the works at Marseilles. Ferdinand Schumacher was president and Hugo Schumacher was secretary of both said corporations, viz., the Illinois River Paper Company and the Marseilles Land and Water Power Company, during the years 1895 and 1896. All the business that was done by both companies appears to have been transacted in the name of the Marseilles Land and Water Power Company, which purchased the supplies, manufactured the product and received the proceeds. But one set of books was kept, and only one office was maintained, and no lease of its property appears to have been given by the Paper Company to the Land and Water Power Company.

On July 17, 1895, Ferdinand Schumacher borrowed, in New York City, $100,000, for which he executed his three

promissory notes, each for one-third of the amount, and secured them by a mortgage deed of that date to Albert O. Beebe, upon the plant of the Illinois River Paper Company, at Marseilles. This mortgage was filed for record August 19, 1895.

In November, 1895, upon the suggestion of Mr. Knott, the superintendent, it was determined to put into the plant of the Illinois River Paper Company, a steam engine, boiler and machinery for use in operating the works in case of a failure in the water power, and in pursuance of this determination a contract was entered into between the Marseilles Land and Water Power Company and appellee, whereby the latter was to sell and deliver to the former, a Corliss engine and condenser, with the necessary equipment, according to specifications contained in the contract, and upon the conditions therein named, for the sum of $4,874, payable one-half cash on shipment, balance sixty days after shipment.

The contract also contained the following provision : " The title and right of possession to the machinery we furnish remains in the Edward P. Allis Company until the same has been fully paid for in cash."

On behalf of the Marseilles Land and Water Power Company, this contract was executed by Ferdinand Schumacher, its president. In pursuance of this contract, the engine and condenser were delivered and accepted December 28, 1895, and the balance wheel, on February 8, 1896, Mr. Knott, as such superintendent, also purchased of appellee other apparatus to be used in the plant, at the agreed price of $1,068, one-half to be paid in cash and one-half in sixty days. But this was a matter outside of the contract for the purchase of the engine.

On January 13, 1896, appellee telegraphed to Hugo Schumacher for the amount then due on the engine, condenser and wheel. The next day Ferdinand Schumacher replied that they did not have the funds at present, but he sent a note for $2,000, due in sixty days from January 13th, and expressed the hope that appellee might be able to get it cashed. This note not being paid when due, the Illinois

River Paper Company, by Hugo Schumacher, its secretary and treasurer, sent a new note for $2,000 due in sixty days and also inclosed a check for $21 for interest. The old note was returned to Ferdinand Schumacher.

On March 5, 1896, Ferdinand Schumacher sent a letter to appellee inclosing a note for $3,040.33, dated March 5, 1896 and due in three months after date. This note included a part of the purchase price of the other apparatus bought of appellee and not included in the original contract. Nothing has ever been paid on either of these notes, nor upon the contract for the engine, except the sum of $437, paid by check February 10, 1896.

All the balance of the contract price for said machinery is still unpaid.

On May 9, 1896, the Illinois River Paper Company, the Marseilles Land and Water Power Company and said Ferdinand Schumacher each made a general assignment to appellants for the benefit of creditors.

On May 20, 1896, appellee filed its petition in the County Court of La Salle County, where the assignment proceedings were pending, for leave to remove the said engine and machinery in question. The two companies interested were made parties defendant, as well as Albert O. Beebe, the mortgagee. The only service of notice upon Beebe was by registered letter, which informed him of the contents of the petition and its prayer, and requested him to appear if he desired to contest the claims of the petitioner. We think the evidence shows that Beebe received this notice and also that the counsel for the corporation interested in the loan of $100,000, replied that he would give the matter his attention. Appellants, as assignees of the two companies interested, appeared and defended against the petition, but neither Beebe, nor any one interested in the loan, made any defense against the claims of appellee, and they are in no way represented in this court, the only parties complaining of the action of the court below being appellants as assignees of the Illinois River Paper Company and the Marseilles Land and Water Power Company. The court entered an order granting the prayer of the petition.

There are four specific assignments, of error, which we will proceed to dispose of in their order.

1. "The court erred in finding that the Marseilles Land and Water Power Company purchased said machinery as the agent of the Illinois River Paper Company."

Whether the one company can be considered as the agent of the other or not, it is quite clear the same persons were the officers of both concerns, running and operating the two as if but one company. Ferdinand Schumacher, as president of the Marseilles Land and Water Power Company, contracted for the machinery to be placed and used in the plant of the Illinois River Paper Company, of which he was also the president, and he stood by and saw it put in the plant of the latter company, without objection, to be used and operated, presumably for the benefit of both companies. But not only was the machinery set up in the plant of the Illinois River Paper Company with the knowledge and consent of its officers, but it gave its notes for the purchase price thereof, one being for $2,000, dated March 16, 1896, which was given in extension of the former note for same amount, and one dated March 5, 1896, which was for $3,040.32, and included the balance of the purchase price for the machinery. Under these circumstances we think the assignees ought not to be permitted to raise the question of agency so as to avoid the contract for the removal of the machinery in case of non-payment. For all practical purposes, so far as running and operating the plants were concerned, the Marseilles Land and Water Power Company was the Illinois River Paper Company. We hold that this assignment of error is not well taken. (See 53 Fed. Rep. 19.)

2. "The court erred in finding that no payment for said machinery had been made excepting the sum of $437, paid February 10, 1896, and the sum of $21, March 16, 1896."

It is not pretended that any other payments were made in cash, than those mentioned, but it is argued that the circumstances show the notes given were received as absolute payment. We are unable to find in the evidence any sup-

port for this contention. When appellee asked for cash, according to the terms of the contract, notes were sent to it as the mere voluntary act of Ferdinand Schumacher, because he had no funds with which to pay the cash. Appellee never asked for the notes, and so far as the record shows, never agreed to accept them in payment.

In Hercules Iron Works v. Hummer, 49 Ill. App. 598, we held that, taking a note either of the debtor or of a third person, for a pre-existing debt is not payment, unless it be expressly agreed to take the note in absolute payment, or unless the creditor has parted with the note, so as to subject the debtor to double payment. And that except in a case where the evidence raises a positive inference of discharge, the burden of proof is on the debtor, to show that the note was both given and received as absolute payment. Many authorities were given in support of these propositions, and we are satisfied of their correctness. Hence, we are of the opinion that, under the evidence, the court held correctly upon the question of payment.

3. "The court erred in finding that the machinery was not subject to the lien of the mortgage of Albert O. Beebe."

We have serious doubts as to the right of appellants to be heard on this proposition. They possess only such rights as were given them by the assignment. They are mere volunteers, and the property assigned to them is subject to the same defects in title, equities and liens as when in the hands of the assignor. Hercules Iron Works v. Hummer, *supra*, and cases there cited.

When the property of the Illinois River Paper Company was assigned to appellants, it was subject to the lien of the Beebe mortgage and to the equities of appellee, and we can not see how they are legally interested in the question as to which has the superior equity.

If the court below had jurisdiction to determine Beebe's rights, and he did not choose to appeal from the order, he would be bound by it, while, on the other hand, if the court had no jurisdiction to adjudicate his rights, they remain unaffected, and it is not for appellants to set up rights for him which he does not choose to assert for himself.

Whether or not he had legal notice of the proceeding, he certainly had actual notice, and thus far has set up no claim in opposition to that of appellee. From anything that appears, he may be entirely content with the action of the court in authorizing the removal of the machinery.

But even if there were no question of that sort in the case, and were Beebe himself defending against the right to remove the machinery, we think, under the evidence and the authorities, he could not succeed in defeating the claim of appellee to a right of removal. That the contract giving the right to remove the machinery in case of non-payment was legal and binding between the parties, can not be questioned. The cases are numerous in which such contracts have been upheld. Hercules Iron Works v. Hummer, *supra;* Ellison v. Salem Coal & Mining Co., 43 Ill. App. 120.

In the case of Sword v. Law, 122 Ill. 487, the doctrine is fully recognized, " that things clearly personal in their nature may retain their character of personalty by the express agreement of the parties, although attached to the realty in such manner as that, without such agreement, they would lose that character, provided they are so attached that they may be removed without material injury to the article itself or to the freehold."

It has also been held that when chattels are sold to the owner of the soil on an agreement that their character as personal property is not to be changed, and a chattel mortgage is taken thereon to secure the purchase money, a prior mortgagee of the land can not claim them, although subsequently annexed to the freehold, if they could be removed without doing material damage to the real estate or to the chattels themselves. Tifft v. Horton, 53 N. Y. 377; Voorhis v. McGinnis, 48 N. Y. 278; Ellison v. Salem Coal & Mining Co., 43 Ill. App. 120.

Many other authorities might be cited to the same effect. We do not think the cases cited by counsel for appellants in support of a contrary doctrine are in point. In the absence of an agreement to the contrary, there is no doubt

that the machinery in question, attached to the real estate as it was, as between mortgagor and mortgagee, or grantor and grantee, would be held to pass as a part of the realty, but the agreement being legal and binding fixed the character of the property, and unless a removal would work injury to the freehold in consequence of its removal, injury to some substantial and material extent, we can perceive no equitable reason why the mortgagee should be permitted to defeat the intention of the parties. His loan was made upon the plant as it then existed, operated by water power, and he will retain all the security he had for the money he advanced, unless the removal of the machinery would work appreciable injury to the freehold.

Without going into a detailed discussion of the manner in which the engine and machinery were set up in the plant, we will content ourselves with saying the evidence does not satisfy us that any material injury will be done to the real estate by permitting the machinery to be removed. No damage need be done which can not be repaired at a comparatively trifling cost. We think the court did not err in finding that the machinery was not subject to the lien of the Beebe mortgage.

The fourth assignment of error is "that the court erred in ordering that unless the defendants or some of them pay, or cause to be paid to petitioner within six months, said sum of $4,416 with interest, petitioner might go upon the premises and remove the machinery."

What we have already said substantially disposes of this question. If the court was right in its other findings, and we have seen that it was, then it logically followed that appellee was entitled to the order made, or one giving it the same rights. The six months' time given was certainly as liberal as could reasonably be asked, and we think the order was properly made.

The point is made by appellants that appellee lost its right to remove under the contract, by commingling its privileged claim with the claim for machinery furnished outside of the contract, and the case of Union Trust Co. v.

Trumbull, 137 Ill. 146, is relied upon to support this contention. We think the authority cited is not in point. The facts of the two cases are entirely dissimilar. Here there was no commingling of claims. When demand was made for payment, it was for the separate items due on each account, and there was no commingling on the part of appellee. It is true that Ferdinand Schumacher sent a note which included both accounts, but this was entirely unauthorized and unsolicited. The principle upon which a right may be lost by reason of a commingling or confusion of goods or claims is, that the identity of the subject of the lien is lost. But here there is no question as to the identification of the engine and machinery which appellee claims the right to remove, and hence the principle has no application. We think this point is not well taken.

Finding no error in the record, the order of the County Court will be affirmed.