### C. W. RAYMOND CO. v. BALL.

(Circuit Court of Appeals, Seventh Circuit. October 7, 1913.)

### No. 1992.

FIXTURES (§ 20*)—BETWEEN CLAIMANT OF CHATTELS AND PRIOR MORTGAGEE—
MACHINERY REMOVABLY ATTACHED TO REALTY—INTENTION.

    Bankrupt, a corporation engaged in the manufacture of brick, and owning the real estate and building constituting its plant, purchased from claimant two brick machines weighing 26,000 pounds each, to replace oth-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ers in its building, under a conditional sale contract which reserved title in claimant until the machines were fully paid for. They were installed in the building by being bolted to foundations built in the earth floor, but could be removed without injury to themselves or to the building. The old machines were also stored and preserved on the premises, and could be re-installed. *Held*, under the rule established by decision in Illinois that, as against a prior mortgagee of the realty, such machines, not having been paid for, remained personal property and the property of claimant, in accordance with the evident intention of the parties to the contract of sale.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 44–46; Dec. Dig. § 20.*]

Appeal from the District Court of the United States for the Southern Division of the Southern District of Illinois; J. Otis Humphrey, Judge.

Suit in equity by the C. W. Raymond Company against Grace Ball. Decree for defendant, and complainant appeals. Reversed.

This appeal is from a decree whereby the appellant's bill for enforcement of its claim of title to property—alleged to be reserved as personal property, although attached to real estate owned by the conditional vendee thereof—is dismissed for want of equity. The property involved in the suit consists of two brick presses—each about 26,000 pounds in mass and installed in a building—which were furnished by the appellant to take the place of other presses used in a plant owned by McNeil Pressed Brick Company, and a written contract with such owner reserving title in the appellant to the presses until the purchase price was paid. They were thus substituted, placed, and used in the manufacturing plant, but $4,140 of the purchase money thereof was unpaid when the vendee corporation became bankrupt within the ensuing year; and the present controversy over the title and right of removal arises between the appellant, under such reservation, and the appellee, as prior mortgagee of the real estate so owned and used by the bankrupt, in Jersey County, Ill. Although the trustee in bankruptcy was made defendant in the bill, his answer raises no issue, and disclaims interest in subject-matter and controversy.

Logan Hay and Clayton Barber, both of Springfield, Ill., for appellant.

Walter B. Douglas, of St. Louis, Mo., for appellee.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The issue of title to the two brick presses in controversy arises between the party who furnished them for installation in the mortgagor's plant and the prior mortgagee of the real estate, with all material facts either stipulated or undisputed. Thus the appeal from the decree in favor of such mortgagee presents the simple question of law: Were the chattels so furnished by the appellant converted into real estate, as irremovable fixtures, through their erection and use in the manufacturing plant, notwithstanding its attempted reservation of title thereto as personal property?

For solution of this inquiry the material facts as to the annexation and status of the brick presses in the plant may be briefly summarized: They were supplied by the appellant as "entirely self-contained" machines, to take the place of other presses operating in the brick-making plant, under stipulation in writing that "deferred payments" were "to

be protected by retention of title to the above equipment until paid for in full." Each weighed about 26,000 pounds and was delivered bolted to timber pieces, to be installed in the building by bolting such timbers to "brick foundations placed in the dirt floor of the building," and each was so installed and used by the bankrupt in the plant. Both can be removed from such foundations and from the building as well, through an ample doorway, without injury to the building, other machinery or freehold, aside from detachment of the foundation bolts. Moreover, the original brick presses, which were removed for such installation, were stored on the premises "under cover," and so remain intact for restoration in the plant, and are "claimed by the" mortgagee.

The record contains no opinion to indicate the theory on which relief was denied—whether the decree was granted on the view that title to the presses passed to the mortgagee under a rule adopted in Illinois, or under a general doctrine (federal or state) assumed to be applicable thereto—but no doubt is entertainable that the lex loci must govern the Illinois property rights (real or personal) involved in this issue to the full extent of any rule there established in respect of such rights, either statutory or through judicial decisions. So, if the inquiry above stated is fairly met by a rule of decisions in Illinois, it must be solved in conformity therewith, irrespective of the lines of general authorities, federal and state, cited and discussed in the arguments of counsel respectively. It may well be remarked, however, by way of premise for consideration of the Illinois decisions, that the general authorities referred to have not been harmonious in their interpretations of the modern law of fixtures, resulting in diversity of lines upon the tests applied to ascertain whether fixtures are removable. As stated by Kent (2 Kent's Com. 343):

"The law of fixtures is in derogation of the original rule of the common law, which subjected everything affixed to the freehold to the law governing the freehold; and it has grown up into a system of judicial legislation so as almost to render the right of removal of fixtures a general rule, instead of being an exception."

While departure from the ancient rule has thus received judicial sanction in England and in this country, the courts of the several states have differed in the extent of such departure, ranging the states substantially into two lines of ruling upon the present inquiry: In one line (exemplified in Campbell v. Roddy, 44 N. J. Eq. 244, 14 Atl. 279, 6 Am. St. Rep. 889, and Binkley v. Forkner, 117 Ind. 176, 19 N. E. 753, 3 L. R. A. 33), the intention of the parties to the transaction that annexation to the realty shall not deprive the chattel of its character as personalty prevails to that end, as against a prior mortgagee of the realty and allied interests, whenever it appears that it can be removed without material injury to the freehold or to its usefulness as a chattel. The other line (exemplified in Fuller-Warren Co. v. Harter, 110 Wis. 80, 85 N. W. 698, 53 L. R. A. 603, 84 Am. St. Rep. 867, cited in support of the decree) not only rejects the above-mentioned test of removability, but adopts the doctrine generally referred to as the "Massachusetts rule," in substance, that an agreement between the mortgagor and his vendor of chattels to be attached to the freehold, for retention of title in the vendor, cannot "bind or affect the mortgagee of the

realty," and that annexation of the chattel passes title "to the mortgagee as a part of the realty." Thus the last-mentioned line of authorities excludes, in favor of a prior mortgagee of the realty, both of the tests of severability upheld and applied against the mortgagee by the other line, and their divergence in doctrine is plainly marked.

The import, therefore, of the adjudications in Illinois, relied upon for reversal of the decree, must be ascertained in the light of the above-mentioned conflict in other jurisdictions over the rule to be applied in reference to a mortgagee of the realty, under the modern law of fixtures—well recognized as a question for judicial determination in the states, respectively, in the absence of statute.

Taking up the earlier (1867) and leading decision of the Supreme Court directly in point, in Kelly v. Austin, 46 Ill. 156, 158 (92 Am. Dec. 243), we believe it to be unmistakable that the court of ultimate authority in the state thereby adopted and enforced the rule and tests of severability of fixtures, as against a prior mortgagee of the realty, upheld·in the first above-mentioned line of authorities. As stated at the outset of the opinion, the question there presented was this:

"Whether the building erected upon the lot, which was sold under the mortgage, was permanent and fixed in its character, and formed a part of and passed with the ground when it was sold; or was it temporary, and so far detached as not to form a part of the realty?"

It further states that the building "was placed on the lot several months after the mortgage was given by the mortgagor and his partner in the housejoiner business," and that it was so placed "by the firm for the use of their business," while the lot was owned by the mortgagor alone. The bill was filed by the purchaser of the lot, under foreclosure of the mortgage, to restrain the mortgagor from removal of the building, and the decree below enjoined such removal. On the mortgagor's appeal this decree was reversed by the Supreme Court, speaking unanimously through the opinion by Mr. Justice Walker. While no review or citation of authorities appears therein, the fact of the other copartner's interest in the building, together with the "temporary use" for which it was erected and placed upon blocks "not sinking in the soil," are recited in the opinion as sufficient evidence of intention that it was not "to become fixed as a part of the real estate." Its conclusions are thus stated: The mortgagor—

"being the owner of an undivided half [of the building], we have no doubt that it might be removed against the wishes of the mortgagee. It is the same as if the mortgagor had licensed a stranger to place it there, with the right of removal. It then follows that the court below erred in rendering a decree restraining its removal."

That this ruling is plainly inconsistent with the entire doctrine of the so-called "Massachusetts rule" is not only obvious, but well exemplified in Thompson v. Vinton, 121 Mass. 139, 142, holding thereunder that title passed to the mortgagee under like conditions.

The later case of Sword v. Low, 122 Ill. 487, 493, 13 N. E. 826, presents an instructive opinion—reviewing numerous general authorities upon the issue of removability of fixtures, and citing Kelly v. Austin, supra, for the force which may be given the intention of the parties—

stating "great unanimity in the authorities" upon the following proposition:

"Things personal in their nature may retain their character of personalty by the express agreement of the parties, although attached to the realty in such manner as that, without such agreement, they would lose that character, provided they are so attached that they may be removed without material injury to the article itself, or to the freehold. It is not held that parties may, by contract, make personal property real or personal at will, but that where an article personal in its nature is so attached to the realty that it can be remove< without material injury to it or to the realty, the intention with which it is attached will govern; and, if there is an express agreement that it shall remain personal property, or if. from the circumstances attending, it is evident or may be presumed that such was the intention of the parties, it will be held to have retained its personal character."

Moreover, that articles such as—

"portable mills, engines, boilers, and the like, must, in the nature of things, be more or less firmly fixed to the soil, or some appurtenant thereto, before they can be put to the use for which they are designed. It may be conceded that such articles, even slightly affixed to the realty, will, in the absence of circumstances raising a contrary presumption, or evidence showing a contrary intention, be presumed to have been attached as permanent accessions to the soil, yet it is apparent, from the authorities that, however permanently attached, if removable without material injury, the intention, to be inferred from the circumstances, and the relation of the parties to each other and to the realty, or as shown by evidence, will be of controlling and decisive importance."

The subject-matter of the controversy was an engine and boiler which had become attached to the realty, with chattel mortgages preserved thereon in favor of the vendor to secure the purchase money, and the right of removal was upheld in favor of. such claimant as against a subsequent mortgagee of the realty, who had obtained from the mortgagor conveyance of his equities in the realty. Various pertinent circumstances are recited in the opinion as proving the constant understanding between the vendor and the vendee mortgagor that the engine and boiler were to remain personalty until the purchase money was paid up, although they were ultimately affixed to the realty by foundations seemingly permanent; and it is further stated, as apparent at the date of the mortgage given upon the realty, that the engine and boiler "had not become a part of the realty, but, by virtue of the agreement and chattel mortgage mentioned, had retained their character as chattels," and that such mortgagee of the realty was chargeable with notice thereof; also that he had actual notice of the vendor's claim and gave it recognition by his conduct, immediately prior to his purchase of the land.

Thus the case is distinguishable from the issue involved in Kelly v. Austin, supra, both because the real estate mortgage was subsequent to the furnishing of the engine and boiler, and because of the finding of notice to and conduct on the part of the mortgagee, upon which the agreement with the mortgagor for removability may have been enforced. We do not understand, however, that either or both of these distinctions of fact render the doctrine of the decision entirely inapplicable to the present issue, as counsel for the appellee contends. In reference to a prior mortgagee, enforcement of title reserved in favor of a sub-

sequent vendor of fixtures may reasonably be authorized, because they formed no part of the realty when accepted as security by the mortgagee, so that neither notice nor consent on his part is required for severability, under the authorities supporting such right. On the other hand a subsequent mortgagee taking the real estate as he finds it may not be bound without notice or consent, although the authorities do not concur in that view, as referred to in the above-mentioned opinion. Nevertheless, the case plainly involved the question whether the engine and boiler became realty per se in favor of the mortgagee, through their ultimate annexation on foundations as described, so that it became necessary to ascertain the modern rule of law applicable thereto. We believe the doctrine and line of authorities there approved and applied to be consistent with the rule upheld in Kelly v. Austin, and persuasive, to say the least, by way of reaffirmance thereof.

Furthermore, the doctrine of the above-mentioned decisions has become well recognized in the Appellate Courts of Illinois as the established rule for removability of fixtures as against a prior mortgagee, either with or without actual notice of the intention. Andrews & Co. v. Chandler, 27 Ill. App. 103, 109; Ellison v. Salem Coal & Min. Co., 43 Ill. App. 120, 124; Hercules Iron Works v. Hummer, 49 Ill. App. 598, 601; Schumacher v. Edward P. Allis Co., 70 Ill. App. 556, 559.

On behalf of the appellee, however, various other cases in Illinois are cited as tending to disapprove the doctrine of the foregoing authorities, and it is contended thereupon, in effect, that the rule applicable to the case in Illinois is unsettled, to say the least, so that the issue remains open for determination under the general authorities. On examination of these cases we are satisfied that neither of these decisions tends to overrule or disapprove the doctrine in question. General expressions are called to our attention in several opinions—notably, in Dobschuetz v. Holliday, 82 Ill. 371, 374; Baird v. Jackson, 98 Ill. 78, 88; Fifield v. Farmers' Nat. Bk., 148 Ill. 163, 168, 35 N. E. 802, 39 Am. St. Rep. 166; Williams v. Chicago Exhibition Co., 188 Ill. 19, 29, 58 N. E. 611—which appear to be inconsistent with the rulings in Kelly v. Austin and Sword v. Low, when so taken apart from their context in the opinions, although no purpose to overrule or modify either thereof is suggested in any of these citations. Such remarks, however, are plainly without force to that end, as neither of these cases presented the issue of removability, nor the doctrine thereof involved in the last-mentioned decisions. While the rights of a mortgagee to enjoin the commission of waste by the mortgagor and parties claiming under him were involved in Williams v. Chicago Exhibition Co., the buildings and structures in controversy were permanent in character, plainly not within the rule of Kelly v. Austin, and the decision in favor of the mortgagee was in no sense inconsistent therewith. In the absence of an issue requiring decision thereupon, these excerpts from the opinions referred to cannot disturb a rule otherwise judicially upheld.

We are of opinion, therefore, that the rule for which appellant contends is settled in Illinois, and authorizes the relief sought in its bill. The decree of the District Court is reversed accordingly, with direction to grant such relief.