PFLUEGER v. LEWIS FOUNDRY & MACHINE CO.

(Circuit Court of Appeals, Sixth Circuit. December 14, 1904.)

1. MECHANICS' LIENS—MACHINERY—FIXTURES—BANKRUPTCY.

A bankrupt, engaged in manufacturing steel and iron, purchased a "squeezer" and a steam pump for use in his steelmill. The squeezer was a heavy piece of machinery; weighing, with the pump, 37,500 pounds. It was erected on a brick base, to which it was fastened with bolts. To provide proper space therefor, the roof of the building was carried up some six feet, and a skylight built on top. The pump was to be put on a similar base, but none of the parts of the machine were connected with the wall of the building. *Held* that, as between the bankrupt and the seller, such machinery was a fixture, and within Rev. St. Ohio 1892, § 3184, providing for a mechanic's lien for the furnishing of machinery for a mill, etc., on the mill or manufactory, and on the interest, leasehold, or otherwise, of the owner in the lot or land on which the same may stand.

2. SAME—PAYMENT—CHECKS.

Where a bankrupt gave checks to the seller of machinery in payment therefor, both parties expecting that the bankrupt would provide necessary funds within a few days to pay the checks, during which the payee agreed to hold them, but funds were never so provided, and there was no express agreement that the checks should be received as payment, the seller was remitted to his original rights under the contract of sale, without regard to the checks.

Appeal from the District Court of the United States for the Northern District of Ohio.

W. E. Young and Francis Seiberling, for appellant.

Charles J. Estep and Robert M. Morgan, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This controversy arose in the court below upon a petition presented by The Lewis Foundry & Machine Company, praying for the recognition and enforcement of a mechanic's lien which it claimed, under the statutes of Ohio, upon the mill or manufactory of the bankrupt, the Ohio Steel & Iron Specialty Company, as well as upon the lands and premises upon which the same was built, and specifically upon certain particular machinery which it had furnished and sold to the bankrupt to be put into and used in said mill. It was for the purchase price of this particular machinery that the petitioner claimed the lien. The referee disallowed the petition, and the matter was taken before District Judge Wing upon a petition for review. The District Judge reversed the order of the referee, and directed the entry of an order allowing the lien claimed upon the mill and the land on which it stood, but disallowing it in so far as it was asserted as a distinct and separate lien upon the particular machinery sold by the petitioner to the bankrupt. No appeal was taken by the petitioner from this last part of the order, but the trustee has appealed from so much of the order as allows the lien upon the mill and the premises occupied by it. The mill was a rolling mill, used for the manufacture of steel and iron products. For the purpose of equipping it with machinery desirable for its work, the bankrupt on March 31, 1903, purchased, and the appellee sold to it, a machine called a "squeezer," and a steam pump to supply it with hydraulic pressure. The function of a squeezer is to receive the product of the furnace after it has passed from the furnace between the rolls, and further to compact it by squeezing under hydraulic pressure, after which it is cut into billets. The squeezer is a heavy piece of machinery; weighing, with the pump, as much as 37,500 pounds. In the mill it was erected upon a base built of brick, four feet high, through which bolts were carried up to receive the base of the squeezer and burrs or nuts to hold the latter securely on its foundation. To provide a proper place for it, the roof of the building was in this instance carried up some six feet, and a skylight put in at the top. The steam pump was to be put upon another similar base. Neither of the parts of the machine was connected with the wall of the building. The squeezer had already been erected in the mill at the time when the petition in bankruptcy was filed, but the steam pump, although it has been delivered at the works, had not yet been set up. The pump was to get its steam from the "header"—a large conduit coming from the boiler and carried out into the building to supply steam by branches to the different engines or machines in the building. The purchase price of the machinery was $3,750, to be paid within 30 days from the date of the contract. The necessary proceedings to obtain a lien were duly taken within the time prescribed by the statute. The purchase price not be-

ing paid when it became due, the appellee pressed for payment. The Ohio Steel & Iron Specialty Company was in straitened circumstances and could not, or at least did not, pay the debt, but at length gave to the appellee its two checks, for $1,875 each, in settlement. These checks were drawn upon a bank where, as both the parties knew, the drawer had no funds, but where it was supposed by them he would before long have sufficient to pay the checks; but, though the checks were afterwards presented, no part of them was ever paid. On or about July 3, 1903, a petition in bankruptcy was filed by the creditors of the Ohio Steel & Iron Specialty Company, whereon it was shortly thereafter adjudged bankrupt. Pflueger was appointed trustee.

The principal questions argued by counsel orally and by brief are, first, whether the Ohio statute requires that the machinery, etc., furnished to a mill, manufactory, etc., must be something intended to be so attached to the realty as to become fixtures thereon, or whether the statute extends to machines not having that characteristic, and may continue to be personal property; and, second, whether this particular machinery should, upon the facts stated, be adjudged to be fixtures or chattels. The statute (section 3184 of the Revised Statutes of Ohio of 1892) provides as follows (omitting irrelevant matter):

"A person who performs labor or furnishes material or machinery * * * for erecting, altering, repairing or removing * * * a mill or manufactory * * * by virtue of a contract with the owner or his authorized agent, shall have a lien to secure the payment of the same upon such * * * mill or manufactory * * * and upon material and machinery so furnished, and upon the interest, leasehold, or otherwise, of the owner in the lot or land on which the same may stand, or to which it may be removed."

The statutes of the different states providing for this class of liens vary so much that the construction which has been put upon them, and the language employed by their courts in such construction, must be attentively observed, before one can properly appreciate the value of the decisions relating thereto. We are required, however, to accept and conform to the construction which the Supreme Court of Ohio has given to this statute. It would seem, as a matter of first impression, that the Legislature of Ohio did not intend by section 3184 to prescribe, as a test for the application of its enactment, the question whether the thing furnished is something intended to become a fixture, and will be such when placed in the intended location and relation to the mill or manufactory. The statute makes a distinction between the mill or manufactory and the real estate and the machinery furnished by the lienor. If the machinery furnished becomes a fixture, there was no need to expressly declare that the lien should extend to it. The Ohio Supreme Court holds that the lien given by this statute arises when it is furnished, and is not postponed until it is put in its place in the mill (Beckel v. Petticrew, 6 Ohio St. 247)—a conclusion wholly inconsistent with the idea that the lien attaches only when the machine or other thing is parcel of the realty, for nothing becomes a fixture until it is affixed. It was held by the Circuit Court of Appeals for the Fifth Circuit, affirming the decision of Judge Newman, in Re Georgia Handle Co., 109 Fed. 632, 48 C. C. A. 571, that, under the statute of Georgia which gives a lien upon the "factory" to those furnishing materials or machinery for such factory, it was immaterial whether the

machinery therein should be considered real or personal property. In either case it was subject to the lien. The record failed to show how the machinery was attached to the building. But it was held sufficient that it showed there was such attachment as was necessary to its operation. However, as we intend to decide this case upon another ground, we refrain from expressing any definite opinion upon the question just stated, and do not pursue the consideration of it further.

If the machinery which was furnished by the appellee was of the nature of a fixture to the mill, it is not doubted—indeed, it is conceded by the counsel for the appellant—that the furnishing it entitled the appellee to the lien admitted and allowed by the District Court. In considering whether it was in the nature of a fixture, it is necessary to keep the facts clearly in view. The purchaser was the owner of the mill, and of the land on which it stood. The mill was devoted to the business in which this machinery was to be employed. It had been reorganized for the business of a rolling mill. The foundations in the floor of the mill and the opening in the roof for the squeezer were all constructed for a permanent location in that part of the mill, and it seems reasonable to suppose that the purchaser intended it to be permanently located and to perform its service in that location—not, indeed, irremovably located, because the exigencies of the business might require a demolition or reconstruction of the mill, in which event a fixture may revert to its original status as personal property. This machinery performed a part of the operations of the mill, and was supposed to be a necessary, or at least a useful, factor in performing that part of the work to which it was to be devoted. It was a ponderous structure, not easily moved from place to place. Not only the seller contemplated all these things, but the seller knew or anticipated the substance of them. We have not to decide the question whether, upon such facts, in a case between landlord and tenant, the machine should be held to be a fixture. Nor is there any other relation between the parties which gives rise to any special rule of that character. The general rule upon this subject rests largely upon the presumed intention of the party who acquires the chattel and brings it into fixed association with his own real property. What that intention was in the present case seems clear. We think there can be no doubt that the Ohio Steel & Iron Specialty Company intended to affix the machine in question to the real estate as a part of the mill—to remain such permanently. The modern authorities, at least, upon this subject, with hardly any exception, agree that, upon such a state of facts as is presented here, the machine or other thing becomes a fixture, in the absence of any statute leading to a different result. Hill v. National Bank, 97 U. S. 450, 24 L. Ed. 1051; New York Life Ins. Co. v. Allison, 107 Fed. 179, 46 C. C. A. 229; Hooven, Owens & Rentschler Co. v. John Featherstone's Sons, 111 Fed. 81–94, 49 C. C. A. 229; William Firth Co. v. South Carolina L. & T. Co., 122 Fed. 569, 59 C. C. A. 73; Murray v. Bender, 125 Fed. 705, 60 C. C. A. 473, 63 L. R. A. 783; Hopewell Mills v. Taunton Savings Bank, 150 Mass. 519, 23 N. E. 327, 6 L. R. A. 249, 15 Am. St. Rep. 235; Voorhis v. Freeman, 2 Watts & S. 116, 37 Am. Dec. 490; Potter v. Cromwell, 40 N. Y. 287, 100 Am. Dec. 485; McRae v. Central National Co., 66 N.

Y. 489; Pond Mach. Tool Co. v. Robinson, 38 Minn. 272, 37 N. W. 99; Dudley v. Hurst, 67 Md. 44, 8 Atl. 901, 1 Am. St. Rep. 368; Fifield v. Farmers' Nat. Bank, 148 Ill. 163, 35 N. E. 802, 39 Am. St. Rep. 166; Delaware, L. & W. R. Co. v. Oxford Iron Co., 36 N. J. Eq. 452; Coleman v. Stearns Mfg. Co., 38 Mich. 40; Longbottom v. Berry, L. R. 5 Q. B. 123; Holland v. Hodgson, L. R. 7 C. P. 334 (in Exch. Chamb.).

Counsel for the appellant contends, however, that, although there is no statute of Ohio which controls the determination whether a thing is a fixture, yet the Supreme Court of the state has settled the law of the state otherwise than as we understand the general rule to be.

In Allison v. McCune, 15 Ohio, 726, 45 Am. Dec. 605, a mortgagee of a mill site described by metes and bounds, "with all appurtenances," brought suit against an execution creditor who had levied upon and removed the machinery of a steam grist and saw mill standing on the mortgaged premises, for the impairment of the mortgagee's security. The question was whether the machinery was personalty or fixtures belonging to the realty. The court held that it was part of the realty, and gave judgment for the plaintiff; saying, "The evidence shows it was placed there for permanent use; that it was attached to the mill and the freehold."

The next case, which is one principally relied upon by the appellant, is Teaff v. Hewitt, 1 Ohio St. 511, 59 Am. Dec. 634. This, also, was a suit by a mortgagee of a lot by its number, "on which," as recited, "is erected a woolen factory," against execution creditors of the mortgagor who were levying upon the boiler, engine, and the carding, breaking, spinning, and other machines such as are used in such mills. The question, so far as it related to the boiler and engine, was eliminated from the case during its progress, but remained for decision in respect to the other machinery. This other machinery was fastened to the floor by cleats to keep it steady while in operation. It was easily removable, and the mortgagor had been accustomed, while he had used and occupied the building, to remove it from one part of the building to another to suit his convenience; to sell it, and purchase other machinery adapted to his wants, and place it in the building. At the time when the mortgage above mentioned was given, the mortgagor gave another mortgage upon part of the machinery to secure the same debt to the same mortgagee. In the opinion, Judge Bartley discusses the whole doctrine of fixtures with much elaboration. Many suggestions applicable to different branches of the subject are made, which it is not necessary to canvass now. He states, as the result of his examination and review of the authorities, his conclusion to be that the safest criterion is the united application of the following requisites:

"(1) Actual annexation to the realty, or something appurtenant thereto. (2) Appropriation to the use or purpose of that part of the realty with which it is connected. (3) The intention of the party making the annexation to make the article a permanent accession to the freehold; this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made."

We may observe, in passing, that the facts of the case at bar fully respond to all the conditions thus proposed.

Applying this test to the facts, the court held that the machines, other than the boiler and engine, were not fixtures, but personalty. The court did not rely upon the fact that a chattel mortgage had been given, but stated that the conclusion would have been the same if that transaction had not occurred. In the course of his discussion, the learned judge suggests as a line of demarcation between a fixture and personalty the distinction of the motive or propelling power of the mill from the machinery which is propelled by the power. Upon this distinction, as there indicated, counsel for the appellant here contends that the squeezer and pump would fall without the line which includes fixtures. This might admit of some question. But it is evident from the test which the court proposed for itself that the distinction just mentioned was not intended to be given as a constant criterion, but only one of the lights by which in many cases the proper conclusion might be reached. The court admits that the character of the article may be changed from one side of the line to the other by agreement of parties, and that a conveyance, by describing its subject as a mill or manufactory, would carry the machinery fixed and used therein. Another reason for supposing that the court did not intend to lay down such a test as a rule is that it could not always or often be applied without confounding the principles of the law of fixtures as they have always and universally been applied—as, for instance, between landlord and tenant, administrator and heir, and grantor and grantee. For, however the decisions have varied in respect to the law governing particular classes, they have never failed to recognize that different rules apply to different classes of parties. It is to be noticed that the case of Allison v. McCune, supra, was cited approvingly, and without any suggestion of limitation.

Fortman v. Goepper, 14 Ohio St. 558, was a case between the mortgagee and subsequent creditors of the mortgagor, and involved the nature of certain machinery in a brewery covered by the mortgage. The property had been conveyed to the mortgagees by a deed of the land and a bill of sale of the personal property, and each was in like manner separately mortgaged back for the purchase price. It was held—pursuing the course of dealing of the parties—that the machinery should be regarded as personal property. This was applying a principle recognized in Teaff v. Hewitt, supra, which may be stated to be that, when an article of personal property is associated with or attached to realty, its character may be fixed by the agreement of the parties concerned, provided the rights of third parties are not thereby interrupted.

The next case involving this subject was Brennan v. Whitaker, 15 Ohio St. 446, where a mortgagee of chattels—machinery in a steam sawmill—brought suit against parties claiming under a subsequent mortgage of the real estate whereon the mill was situated, into which the machinery had been placed after the giving of the chattel mortgage above mentioned. The machinery consisted of boilers, an engine, mill shafting, a drum, a balance wheel, the gearing for an upright saw, one muley saw and its gearing, and one pony engine. The main shaft was detachably connected with the engine, and the drum was in like manner mounted on the shaft. The gearing of the upright

saw was connected by a belt with the drum. The other saw was connected with the main shaft. All these parts were detachable from each other. Some of the machinery could be taken through the doors of the mill, and some could not. The chattel mortgage contained a privilege to enter and remove the machinery in case of default in payment of the debt secured thereby. The court held that all parts of this machinery were fixtures, and that, although the chattel mortgage had been duly registered, the title of the mortgagee was subordinate to that of the mortgagee of the real estate. The case of Teaff v. Hewitt, supra, was cited by counsel on both sides, but was not referred to in the opinion of the court. It is obvious, however, that, if the suggestion of Judge Bartley in the latter case had been observed, this decision could not have been reached.

The last decision of the Supreme Court of Ohio to which our attention has been called is that of Case Mfg. Co. v. Garven, 45 Ohio St. 289, 13 N. E. 493. This was a suit by the assignee of one Patton, an insolvent debtor, for an interpleader between certain parties, of whom were the Case Manufacturing Company, who had supplied Patton with certain machinery, not including the engine and boiler, for a flouring mill, and the Mansfield Machine Works, who had supplied a boiler and engine for the same purpose. All this machinery had been placed and used in the mill. Both these parties claimed the proceeds of this machinery supplied by them. Other defendants claimed under mortgages of the real estate given by parties who derived title from Patton. The court below had sustained the claims of the mortgagees of the real estate. It appeared that, when the Case Manufacturing Company sold the machinery to Patton, it was mutually agreed between those parties that the title should remain in the vendor until the machines were fully paid for, and they had not been paid for. There was a similar agreement between Patton and the Mansfield Machine Company. Following Brennan v. Whitaker, supra, the Supreme Court held that the Mansfield Machine Company should be postponed to the claimants under the real estate mortgages, but that the Case Manufacturing Company should have priority over them. The conclusion in respect to the claim of the latter company could be supported on either of two grounds, namely, a holding that the machinery was not in the nature of fixtures, or a holding that, though it might otherwise have been regarded as a fixture, yet by a competent agreement of the parties it had been assigned the status of personal property. It is apparent that the court based its decision upon the fact that the parties had agreed to give this machinery the character of personalty. Judge Minshall, who delivered the opinion of the court, begins by referring to this agreement and affirming its validity. He then proceeds to state the facts, and follows with a discussion of the general law on the subject as given in the text-books. Referring to the case of Teaff v. Hewitt, supra, he states Judge Bartley's suggestion of a method of distinction, and gives reasons for thinking it a simple and easy one; but that distinction was not applied and could not be, for he says (13 N. E. 497):

"There is no question but that the character of things which would otherwise be fixtures may be changed to that of personalty by the agreement of the

parties, and conversely, so as to be binding upon them. And the stipulation of the vendor in each of these cases that the title to the property furnished by it should not pass until it had been paid for by the purchaser precludes the idea that either of them intended that the machinery furnished by it should become a part of the realty until payment had been made, as to impute a different intention would be to suppose that neither intended the benefit of a stipulation exacted with the greatest care in its own behalf."

And in that paragraph of the syllabus which states the holding of the court in regard to the claim of the Case Manufacturing Company, and which by the law of Ohio is to be regarded as the law of the case, the statement is that:

"Where prior to the act of May 4, 1885, regulating, among other things, 'conditional sales' of personal property (82 Ohio Laws, p. 238), A. sold and delivered to B. the machinery, other than the motive power, used for the manufacture of flour by the roller system, and stipulated that the title to the property should not pass until paid for, and thereupon the machines were, with the assent of A. and according to the understanding at the time they were sold, placed by B. in his mill, and, for the purpose of facilitating their use, were fastened to the floor by bolts, but could readily be removed without injury to the building or the machinery itself, and placed in another building, held, that the machines were personalty, although so fastened to the building, and that the agreement was valid, as against a subsequent mortgage of the realty without notice of the agreement."

The case of Brennan v. Whitaker is cited in the opinion with no indication of disapproval. We have analyzed the foregoing cases in detail for the reason that the appellant's case depends upon the question whether the law of Ohio upon this subject is peculiar, and establishes the distinction as one depending on the question whether the article is part of the motive power, or is part of the machinery propelled by it. The most that can be said—though we think it cannot be correctly said—is that there are conflicting utterances by the judges in the course of their opinions. There is no conflict in actual decisions. But if there were, inasmuch as neither the latest case, Case Mfg. Co. v. Garven, nor Teaff v. Hewitt, professes to overrule the cases of Allison v. McCune and Brennan v. Whitaker, or either of them, the law would be so unsettled that we should have to judge for ourselves.

It may further be observed that by the language of the statute the lien is given upon not only the real estate, but upon the "mill, manufactory * * * or other structure," etc. Significance should be given to this accumulation of descriptions. In a deed or mortgage, such further description added to the general description, as by metes and bounds or number of a lot, would, even by the unquestioned rule in Ohio, as elsewhere, carry the machinery, such as that here in question, as fixtures or parts of the mill. The reason for the rule is twofold—because the employment of the further description indicates a purpose to include something else than is included in the general description, and also because the use of such specific terms as "mill, manufactory," etc., imports that what goes to make the specific thing was intended to be included. We see no reason why this language in the statute should not be construed in the same way. The grounds for such construction are precisely the same. But we are content to rest our decision upon the conclusion reached in respect to the question previously discussed.

One other question remains: It appears that some time after the delivery of the machinery the vendee, on being pressed for payment, gave its checks upon a bank for the amount due. It further appears that it had no funds in the bank to pay them, but that the parties expected that the vendee would have the necessary funds there in a few days, until the expiration of which the payee agreed to hold them. But the funds were not provided, and the checks were never paid. There was no express agreement that the checks should be received in final payment, and, if there were, the failure of the drawer to provide the funds for payment would absolve the payee from his agreement. The just and reasonable conclusion to be drawn from the evidence is that they were taken as conditional payment only. The Kimball, 3 Wall. 37, 45, 18 L. Ed. 50; Embrey v. Jemison, 131 U. S. 336, 346, 9 Sup. Ct. 776, 33 L. Ed. 172; 2 Daniel on Neg. Inst. § 1623. The maker of the checks having provided ·no funds for their payment, the vendor was remitted to his original rights under the contract of sale. Fleig v. Sleet, 43 Ohio St. 53, 1 N. E. 24, 54 Am. Rep. 800.

For the reasons above stated, the order or decree of the court below is affirmed, with costs.