## In re SUPERIOR DROP FORGE & MFG. CO.

(District Court, N. D. Ohio, E. D. February 28, 1913.)

### No. 4,373.

1. BANKRUPTCY (§ 140*) — OWNERSHIP OF PROPERTY — SELLER AND BUYER OF MACHINERY—EFFECT OF SUBSTITUTION OF PURCHASERS.

Claimant sold two drop forges to the owner of a plant on a conditional sale contract which provided that they should be considered personalty and remain the property of claimant until paid for, which contract was duly recorded. The machines were very heavy and were bolted to concrete beds but could be removed without injury to the building. The purchaser sold the plant to bankrupt, not having paid for the forges, and for the purpose of substituting bankrupt in his place a new contract in the same terms was made between claimant and bankrupt and recorded and the old one canceled. *Held*, that the transaction did not affect the status of the forges, which remained personal property as between claimant and the bankrupt and its creditors and holders of subsequently acquired liens on the plant.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. § 140.*]

2. FIXTURES (§ 22*)—BETWEEN SELLER AND BUYER OF MACHINERY—INTENT IN MAKING ANNEXATION.

Drop forges, motors, and printing presses, all heavy machines bolted to concrete beds in a manufacturing plant and which were necessary to the business carried on therein but could be removed without injury to the building, may retain the character of chattels and not become a part of the realty, under the law of Ohio, where such was the intention of the owner of the plant when they were installed, as where they were purchased under conditional sale contracts expressly providing that they should remain personalty and the property of the seller until paid for.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. § 57; Dec. Dig. § 22.*]

3. BANKRUPTCY (§ 144*)—TITLE AND RIGHTS OF TRUSTEE—EQUITIES OF THIRD PERSONS.

Bankr. Act July 1, 1898, c. 541, § 47a2, 30 Stat. 557 (U. S. Comp. St. 1901, p. 3439), as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (U. S. Comp. St. Supp. 1911, p. 1500), by vesting a trustee with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings, as to property in the custody of the court, simply puts the trustee in the position of a creditor who has reduced his claim

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to judgment, whose rights with respect to specific property are subject to all latent or secret prior liens or equities in favor of third persons.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 237; Dec. Dig. § 144.*]

4. BANKRUPTCY (§ 140*)—TITLE AND RIGHTS OF TRUSTEE—PROPERTY HELD UNDER UNRECORDED CONDITIONAL SALE CONTRACTS — OHIO STATUTE — "CREDITOR."

Gen. Code Ohio, § 8568, which provides that conditional sale contracts, unless evidenced by writing and recorded, "shall be void as to all subsequent purchasers and mortgagees in good faith and creditors," avoids such contracts as to such creditors only as have acquired liens upon the property and does not include creditors who, prior to the recording of such a contract, have acquired general liens through the appointment of a trustee in bankruptcy for the purchaser.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. § 140.*

For other definitions, see Words and Phrases, vol. 2, pp. 1713–1722; vol. 8, pp. 7622, 7623.]

5. MECHANICS' LIENS (§ 198*) — PROPERTY AFFECTED — FIXTURES PURCHASED UNDER CONDITIONAL SALE CONTRACT.

A mechanic's lien which under the statute attaches to real property only does not attach to machinery installed on the premises as against the seller of such machinery under a conditional sale contract valid as against the owner of the premises and by which he agreed that it should remain personalty and the property of the seller until paid for, and it is immaterial that the contract had not been recorded at the time the mechanic's lien was acquired.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 348–355; Dec. Dig. § 198.*]

In the matter of the Superior Drop Forge & Manufacturing Company, bankrupt. On review of orders of referee. Reversed in part.

Geo. O. Willett, of Cleveland, Ohio, for petitioning creditors.

F. C. Friend, of Cleveland, Ohio, for bankrupt.

White, Johnon & Cannon and Smith, Taft & Arter, all of Cleveland, Ohio, for trustee.

KILLITS, District Judge. This case is before the court on petitions for review filed by the trustee and two claimants, the Alliance Machine Works and the Lake Erie Nail & Supply Company (which parties will be designated hereafter as the Alliance Works and the Lake Erie Company).

[1] The facts show that in the spring of 1911 the Alliance Works sold to one Eurich two drop forges on a conditional sale contract which provided that the machines should be considered personal property until paid for and should remain the property of the vendor until all charges therefor had been paid. They were installed in Eurich's plant upon heavy cement foundations specially constructed for them, to which they were bolted. Although exceptionally heavy, they were capable of removal without injury to the building, which was, however, constructed specially for a forging plant. The conditional sale contracts were filed for record pursuant to section 8568, General Code of Ohio, at the time of installation.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the fall of 1911 the vendee, Eurich, not having complied with the terms of the conditional sale contract, sold his plant to the bankrupt, and in September the Alliance Works entered into a conditional sale contract with the bankrupt covering these two drop forges, with terms similar in all particulars to the contracts made with Eurich, filed them for record, and thereupon released the contracts as against Eurich. The facts show that this was done simply in an attempt to substitute the bankrupt for Eurich as the original vendee and due to the fact that the bankrupt had succeeded to Eurich's business. The referee was of the opinion that these two drop forges had becomes fixtures as to all persons other than the Alliance Works and Eurich when they were first installed, and that, as between the Alliance Works and the bankrupt, they were fixtures in September and could not be treated as personalty under the substituted conditional sales contract, and that therefore the trustee for the creditors of the bankrupt and the Variety Iron Works, who subsequently placed a mechanics' lien on the property, were entitled to treat these two forges as part of the realty.

We think that the referee's conclusion that the transaction in September, through which the attempt was made to substitute the bankrupt for Eurich, affected the status of these two forges is wrong. The facts show simply a desire on the part of the three parties to the transaction, Eurich, the bankrupt, and the Alliance Works, to continue the status of this property as it was established when first installed, and we see no justification in equity in holding that there was any disturbance of the status through the transactions referred to. A short time thereafter the Alliance Works sold the bankrupt a third drop forge, which was installed in the manner of the first two, and simultaneously a conditional sale contract was made and recorded, attempting to retain the status of this machine as personal property with title in the vendor until paid for. The referee awards this forge to the Alliance Works, and it is his decision that the first two forges are part of the realty, to be administered upon for the benefit of creditors generally, subject to the mechanics' lien that we are called upon to review.

[2] The Lake Erie Company, in the fall of 1911, sold the bankrupt five motors and three printing presses; each of them being an exceedingly heavy piece of machinery and each installed on heavy specially constructed concrete bases, to which they were bolted. Each of these machines is removable without damage to the building, and each is an essential to a well-equipped business of the kind in which the bankrupt was engaged. Three of these machines were installed prior to October 20, 1911, and the balance subsequent thereto, but on that date a conditional sale contract was entered into between the bankrupt and the Lake Erie Company by the terms of which these machines were to be regarded as personal property and title to remain in the vendor until paid for. This conditional sale contract was not filed for record under the Ohio statute until March 4, 1912.

A mechanics' lien was perfected by the Variety Iron Works, which the referee finds to be dated December 12, 1911, and which covers all the property in question, in the referee's opinion, except the last drop

forge sold by the Alliance Works. The petition in bankruptcy was filed March 28, 1912.

The referee distinguishes between his holding with reference to the last drop forge, which he concedes to be the property of the Alliance Works, as a chattel, and the machines furnished by the Lake Erie Company, because of the fact that the conditional sale contract held by the latter was not filed for record immediately.

The Variety Iron Works, mechanics' lien holder, is not before the court with brief or argument.

The referee bases his opinion upon the authority of Case Mfg. Co. v. Garven, 45 Ohio St. 289, 13 N. E. 493. We join with him in depending upon that case as controlling very largely the determination of the issues involved, but we are of the opinion that the referee fails to properly apply it.

Teaff v. Hewitt, 1 Ohio St. 511, 59 Am. Dec. 634, is conceded to be the leading case in American jurisprudence upon this general subject and its criterion of an irremovable fixture is that accepted by all courts and text-writers. It is that three tests must unite in application: (1) Real or constructive annexation of the article in question to the realty. (2) Appropriation or adaptation to the use or purpose of that part of the realty with which it is connected. (3) The intention of the party making the annexation to make the article a permanent accession to the freehold.

We may assume that the several articles involved in this contention became fixtures on their several installations if the first two tests were all that determined the question. Each one was constructively annexed to the realty; each one was manifestly appropriated and adapted to the use or purpose of that part of the realty with which it was connected. But the third test fails. All the circumstances speak to the point that the intention of the vendee in annexing them to the freehold was not to presently make them a permanent accession thereto. Bearing in mind the relation of the trustee as the representative of creditors and thereby having the rights and remedies of a judgment creditor, which we will subsequently consider, whatever the bankrupt could legally do by way of exempting these chattels from the responsibility of fixtures through these conditional sale contracts, and which he did do, must be binding upon the trustee. The case of Case Mfg. Co. v. Garven, supra, as it is applied to the facts before us, deals with the question of what a vendee of chattels adapted to become fixtures may legally do by way of contracting that they shall, although affixed to the realty, be treated as personalty.

Whether the distinction made in Case Mfg. Co. v. Garven is artificial or not, it is the law of Ohio and must govern the case before us. It is that machinery which is driven merely and which may be removed without substantial injury to the building, leaving the latter to remain in a state adapted to manufacturing purposes generally, may be the subject of a treaty between vendor and vendee whereby, although affixed, it shall be considered to be personal property subject to the fulfillment of the terms of the contract, but that machinery which furnishes the motive power and which is general in its applica-

tion to manufacturing purposes cannot be installed in a building and remain subject to a contract which shall exempt it from bearing the responsibility of a fixture. So in that case the Case Manufacturing Company was permitted to retain its lien through a conditional sale contract upon certain machines for the manufacture of flour and meal, while the Mansfield Machine Works, a party to the case and having a conditional sale contract the same in character as that of the Case Manufacturing Company, was not permitted to enjoy its provisions because it involved the boiler and engine constituting the motive power of the mill. The court say (45 Ohio St. 301, 13 N. E. 497):

"The difficulty of prescribing a rule that may be applied to cases in general has been confessed both by courts and writers upon the subject; various tests have been adopted, none of which have been applied with anything like uniformity. It may, however, be admitted that the distinction between the motive power of a factory and the machines driven by it is somewhat arbitrary; still it is one based upon a physical difference, easily perceived, if not dictated by any well-defined principle, and is no more illogical than many distinctions to be found in other branches of the law. That which divides all property into real and personal is quite as wanting in anything like scientific classification, but, from its general recognition wherever the common law prevails, is found to be very convenient in practice; and it is such considerations that have always more or less influenced the adoption of definite rules of property. * * *

"Here the question is not whether the character of the property may be changed by the agreement of the parties as between themselves (of this there is no doubt), but, when the property is such that from the manner of the annexation it would, but for the agreement, ordinarily be regarded as a fixture, whether it can be made by the agreement of the parties to preserve the character of personalty so as to avail against innocent purchasers without notice. This must, we think, upon principle and authority, be answered in the negative."

The distinction which serves to determine the power to control by contract the status as a chattel of what otherwise would be part of the realty as a fixture is clearly expressed by the court in Fortman v. Goepper, 14 Ohio St. 558, on page 567:

"The general principle to be kept in view, underlying all questions of this kind, is the distinction between the business which is carried on in or upon the premises, and the premises, or locus in quo. The former is personal in its nature, and articles that are merely accessory to the business and have been put on the premises for this purpose and not as accessions to the real estate retain the personal character of the principal to which they appropriately belong and are subservient. But articles which have been annexed to the premises as accessory to it, whatever business may be carried on upon it, and not peculiarly for the benefit of a present business which may be of a temporary duration, become subservient to the realty and acquire and retain its legal character."

This case is cited by the Supreme Court of Ohio in Case Mfg. Co. v. Garven, and the distinction made evidently lies at the base of the discrimination made in that case between the Case Manufacturing Company and the Mansfield Machine Works; the point being that a contract to maintain the status of personalty might be made with reference to machinery which was peculiar to the special business to be presently carried on upon the premises but could not be made with reference to such machinery affixed to the realty which was not peculiar to the pres-

208 F.—52

ent business but had adaptation to other lines of industry which might be carried on upon the premises. So that, in our judgment, this case of the Case Mfg. Co. v. Garven is authority for the proposition that the bankrupt might well contract that the machinery in question, whether furnished by the Alliance Works or the Lake Erie Company, should remain personalty, although affixed to the realty, until paid for, and that each of these several machines, drop forges, motors, and presses was a chattel as between the vendor and vendee. This position of ours is not in conflict with Pflueger v. Lewis Foundry & Machine Co., 134 Fed. 28, 67 C. C. A. 102, decided by the Circuit Court of Appeals of this circuit: First, because of the difference in questions before the court (there the court simply deciding the question whether a mechanics' lien was valid); and, second, because in that case there was a specific finding that the vendee intended to make the machinery involved a fixture, having granted no reservation by contract, as in the case before us. Judge Severens in his opinion (134 Fed. 31, 67 C. C. A. 105) recognizes the fact that the intention of the vendee controls in this language:

"The general rule upon this subject rests largely upon the presumed intention of the party who acquires the chattel and brings it into fixed association with his own real property. What that intention was in the present case seems clear. We think there can be no doubt that the Ohio Steel & Iron Specialty Company intended to affix the machine in question to the real estate as a part of the mill, to remain such permanently. The modern authorities, at least, upon this subject, with hardly any exception, agree that, upon such a state of facts as is presented here, the machine or other thing becomes a fixture, in the absence of any statute leading to a different result."

It should be noted that the Supreme Court of Ohio in Case Mfg. Co. v. Garven, supra, avoided the effect of the Mansfield Machine Works contract only against "innocent purchasers without notice." The case is not authority for the proposition that, even with respect to the motive machinery, the equity which the Mansfield Works undertook to preserve would not be effective against claimants who were not of the standing of innocent purchasers without notice. It seems to us that the referee in his opinion has plainly overlooked this very important distinction, and it is profitable now to determine whether the trustee in his representative capacity enjoys the exalted status of an innocent purchaser. There is but one answer to this question and that is in the negative.

[3] By the amendment of 1910 to section 47, subd. 2a, the trustee is vested with all the "rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon." Collier remarks, with the production of authorities cited in his note (page 659 [9th Ed.]):

"This language aptly refers to such rights, remedies, and powers as a creditor holding such a lien is entitled to under the law rather than to the rights, remedies, and powers of a creditor who had actually fastened a lien on the property of the bankrupt estate."

In other words, the amendment of 1910 simply puts the trustee in his representative capacity in the position of a creditor who has reduced his claim to judgment. Such a creditor, by the settled law, is subject to all latent or secret prior liens or equities in favor of third

persons.  23 Cyc. 1377; Freeman on Judgments (4th Ed.) § 368; Miller v. Albright, 60 Ohio St. 48, 53 N. E. 490.

[4]  Nor does the language of the Ohio Code respecting conditional sale contracts, which reads that the contracts "shall be void as to all subsequent purchasers and mortgagees in good faith and *creditors*, unless the conditions are evidenced by writing," etc., help any.  Creditors, as the term is there used, by analogy of the same expressions in the law respecting the validity of mortgages of chattel property, means those who have at least taken steps to acquire liens upon the property of the debtor for their claims.  York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782; In re Shirley, 112 Fed. 301, 50 C. C. A. 252; In re First National Bank of Canton, 135 Fed. 62, 67 C. C. A. 536.  And the fact that the filing of the verified statement of the claim and contract was not contemporaneous with the execution does not avail to avoid the effect of the contract with respect to the creditors whose claims become liens through the appointment of the trustee.  The delay only operates in favor of those creditors who may have acquired liens during the interim.  The delayed filing causes the benefits of the statute to work in favor of the vendor against all other creditors of the vendee.  This is the law of Ohio with reference to the delayed filing of chattel mortgages and by analogy applies here.  Wilson v. Leslie, 20 Ohio, 161; York Mfg. Co. v. Cassell, supra.

It follows that the referee's holding as to the last drop forge furnished by the Alliance Works was correct, and the trustee's petition for review directed against it should be denied.  And it also follows that the referee's holding was wrong as to the first two forges furnished by the Alliance Works, and also wrong as to the trustee and those having liens under his appointment with reference to the several machines furnished by the Lake Erie Company.

[5]  There remains now to be examined the apparently perplexing question of priority as between the mechanics' lien of the Variety Iron Works and the liens of the Lake Erie Company.  It will be recalled that, during the interim between the taking of the conditional sale contracts from the bankrupt by the Lake Erie Company and the filing of the verified statement thereof, the Variety Iron Works acquired a mechanics' lien, and at first blush it would seem that the language of section 8568, Ohio Code, requires that the lien of the Variety Iron Works should have priority.  It must be remembered, however, that a mechanics' lien attaches to real property only, whereas the conditional sale section of the Ohio Code deals with personal property.  The delay in filing a verified statement under that section can only work to the involving of the chattel in a lien which may apply to chattels as well as real property.  As to all creditors of the bankrupt except those who became judgment creditors and consequently in position to levy upon these machines as chattels, the failure to file the verified statement was of no consequence.  The machines were each a chattel by virtue of the contract evidencing the intention of the vendee so to consider them.  The mechanics' lienor is bound by the distinction which the Supreme Court of Ohio makes between that kind of machinery which may be the subject of a contract preserving its status as a chattel, although

fixed apparently to the realty, and that class which becomes part of the realty by fixture as to all innocent purchasers without notice, in spite of a contract between vendor and vendee.

In Miller v. Albright, 60 Ohio St. 48, 51, 53 N. E. 490, 491, the court is discussing the inferiority of a judgment lien to an unknown vendor's lien, saying:

"It is a well-established rule that the lien of a judgment attaches only to such beneficial interest in land as the judgment debtor has at the time of its rendition; and, when the rule is not otherwise affected by statutory regulation, as in cases of mortgages and other instruments which become effectual against third persons only on proper registration, the judgment lien is subject to all equities concerning the land which could be successfully asserted against the debtor. This rule is declared in Tousley v. Tousley, 5 Ohio St. 87, where it is said that, so far as the statute goes in giving a judgment creditor preference over mortgages not perfected by delivery to the recorder, 'his rights are absolute, but for everything else he is remitted to general principles, and on general principles it is very clear that he acquires a lien only upon the interest of his debtor and is bound to yield to every claim that could be successfully asserted against him.' Hence the lien of the vendor must be as effectual against the judgment creditor who simply succeeds to the interest of the vendee in the property as it is against the vendee himself. The vendor and the party holding the judgment being equally meritorious creditors, the former has the better equity, because so much of the land as is necessary to pay the amount due him on the purchase price is in equity his property, which ought not to be taken for the payment of another's debt."

So here, dealing with property which may be chattels, and hence not subject to a mechanics' lien or real property, according to the intention of the possessor in apparently affixing it to the real estate, it would seem that, as between conflicting equities, that of the unpaid vendor was superior to that of the mechanics' lienor.

It follows from the foregoing that the referee erred in refusing to allow the testimony of the manager of the bankrupt that at the time of making the agreements with the Lake Erie Company, and at the time the bankrupt installed the property covered by the said agreement, it was not the intention of the bankrupt to make such property a permanent accession to and part of its freehold estate, and that the referee was right in refusing to exclude the testimony offered by the trustee and the Lorain Street Savings Bank Company tending to show that the plant and manufactory of said bankrupt was built solely and wholly for use as a drop forging plant, and also in refusing to exclude testimony that the machinery involved in the several reviews was an integral part of said plant and manufactory. This testimony was competent, both that refused and admitted, in the application of the second and third tests laid down in the criterion established in the case of Teaff v. Hewitt, supra.

The petitions for review of the Alliance Machine Works and the Lake Erie Nail & Supply Company will each be allowed and their liens protected accordingly.