E. A. KINSEY CO. v. HECKERMANN.

HECKERMANN v. E. A. KINSEY CO.

(Circuit Court of Appeals, Sixth Circuit. June 8, 1915.)

Nos. 2750, 2754.

1. MECHANICS' LIENS ⊜⇒32—SUBJECT OF LIEN—MACHINERY—"ALTERING A MANUFACTORY."

Under Page & A. Gen. Code Ohio, § 8308, giving every person, who furnishes machinery for altering a manufactory by virtue of any contract with the owner or lessee of any real estate, a lien to secure payment therefor on such manufactory and the machinery so furnished, and section 8310, providing that machinery so furnished on leased lands shall be held for the debt contracted for or on account thereof, also the leasehold term for such lot and land on which the machinery is erected, machines furnished to a manufacturer occupying one floor of a building under a lease, some of which machines were furnished to be used in making a different style of product, and others were to enable the manufacturer to make certain supplies which he had previously bought, and which machines were chattels and fixtures as between the manufacturer and his landlord, all were furnished for altering the manufactory, which was the leasehold interest in the premises and the equipment thereof, and are subject to lien.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 37; Dec. Dig. ⊜⇒32.]

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2.** Mechanics' Liens ☞5—Statutes—Construction.

These statutes are remedial in their nature and intent, and are to be liberally construed.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 3, 5; Dec. Dig. ☞5.]

**3.** Mechanics' Liens ☞32—Subjects of Liens—Chattels in Leasehold.

The fact that the leasehold possessed no value above the rents reserved, so that the lien was only effective against the machinery, which was not a part of the realty, does not destroy the right to the lien, in view of the history of the legislation, which shows a purpose to enlarge the rights of persons furnishing such machinery.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 37; Dec. Dig. ☞32.]

**4.** Courts ☞366—Rules of Decision—Federal Courts—Interpretation of State Statute.

Federal courts are bound by the construction which the Supreme Court of a state has placed upon its statutes.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. ☞366.

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468; Converse v. Stewart, 118 C. C. A. 215.]

**5.** Fixtures ☞27—Agreement.

An agreement between a landlord and his tenant and one furnishing machinery to the tenant that the machinery shall not become a fixture is valid.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 5, 22, 25, 44, 45, 54; Dec. Dig. ☞27.]

Appeals from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Petition by the E. A. Kinsey Company against A. W. Heckermann, trustee in bankruptcy of James L. Patton, to establish a lien on certain machinery sold to the bankrupt. From a decree establishing the lien as to a portion of the machinery, but denying it as to the rest, both the petitioner and the trustee appeal. Decree reversed, and cause remanded, with direction to enter a decree sustaining the lien as to all the machinery.

These are cross-appeals from a decree entered in the court below January 30, 1915. Patton, trading as the Commercial Packing Company, and also as the Patton Manufacturing Company, had been adjudicated a bankrupt and Heckermann appointed trustee. According to stipulation of the parties, the following in substance are the facts: At and before the bankruptcy, Patton was engaged in the manufacture of automobile electric lamp connectors. He was occupying and using as a manufactory the west half of the fourth floor of what is known as the Murdock Building, in Cincinnati. The building had been designed and intended to afford space for light manufacturing purposes, and the floor space mentioned was held by him under a lease for one year from February 1, 1913. Pursuant to contracts with Patton, the Kinsey Company sold and delivered to him in July, 1913, at the manufactory mentioned, certain machines at specified prices: 1 No. 0 B. & S. tool grinding machine, 2 No. 0 B. & S. wire-feed screw machines, and 1 B. & S. No. 2 wire-feed screw machines. The Kinsey Company, on November 10, 1913, filed in the office of the recorder of Hamilton county, Ohio, an instrument in due form asserting a mechanic's lien against this machinery. The occasion for the pur-

chase of the two No. 0 B. & S. wire-feed screw machines was a sudden change in demand of the trade, from double circuit connectors to single circuit connectors. These machines replaced an automatic screw machine theretofore furnished by the Kinsey Company, and this machine was returned to the Kinsey Company as a credit against the unpaid price therefor. The rest of the machinery so sold and delivered was added to the machinery equipment in the manufactory, for the purpose of enabling the bankrupt to manufacture parts of the product which had theretofore been specially made for him by others and at greater cost. The machines so supplied aggregated something more than 3,400 pounds in weight; one was fastened to a table and the others were screwed to the floor of the manufactory, and all were connected by belting and countershafting with an electric motor which supplied the power for the entire manufactory. The machines were capable of being removed without appreciable damage to the building, and were regarded by the parties and also the lessor as personal property, not as fixtures. The Kinsey Company consented to a sale of the machinery supplied by it, separately from the other assets, and to a transfer of its asserted lien to the proceeds of sale without prejudice. Further, no part of the machinery sold by the Kinsey Company to the bankrupt was used to alter or repair any other machine or equipment of the bankrupt. "It either supplanted and displaced other machinery and equipment or was added to the machinery and equipment owned by the bankrupt at the time" of the Kinsey sale to him.

The Kinsey Company filed a petition in the bankruptcy proceeding, in which it set out its claim for the machinery so supplied, alleged that the claim was unpaid, that the machinery was "furnished in good faith in and about the construction, alteration, and repair" of the manufactory, described the manufactory and the lot on which it is located, the steps it had taken to acquire the mechanics' lien, and prayed its enforcement. The referee denied the lien entirely. Upon review, the District Court allowed the lien upon part of the machinery and disallowed it as to the rest; but the claim, independently of the lien, does not appear to have been questioned. While the appeals are each general in form, yet, through the assignments, the effect of each is limited—that of the Kinsey Company to the portion of the decree disallowing, and that of the trustee to the portion allowing, the lien on part of the machinery.

Roy McLaughlin, of Cincinnati, Ohio, for petitioner.
Paul V. Connolly, of Cincinnati, Ohio, for trustee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above).
[1] The question presented is whether the lien claimed by the Kinsey Company is valid under any statute of Ohio. The only statute relied on or discussed by counsel is embraced in sections 8308 and 8310 (3 Page & Adams' Ann. Gen. Code Ohio), which in material parts are set out in the margin.[1] The District Court reversed the order of the

[1] "Sec. 8308. Every person who * * * furnishes machinery, material * * * for erecting, altering, repairing or removing a house, mill, manufactory, * * * by virtue of a contract, express or implied, with the owner, part owner or lessee, of any interest in real estate, * * * shall have a lien to secure payment thereof * * * upon such house, mill, manufactory, * * * and upon the material or machinery so furnished, and upon the interest, leasehold or otherwise, of the owner, part owner, or lessee in the lot or land upon which they may stand, or to which they may be removed."

"Sec. 8310. Every building erected, or other improvement made, or machinery or material furnished, as mentioned in section eighty-three hundred and eight, on leased lots or lands, shall be held for debt contracted for or on account thereof; also the leasehold term for such lot and land on which they are erected or made. * * *"

referee so far as it affected the two No. 0 B. & S. wire-feed screw machines, and affirmed the order as to the other machines. The theory of the reversal was that, although all the machines were regarded as personal property, the two just mentioned constituted an alteration in the manufactory, but that the other two machines should be treated simply as an addition to the equipment.

We agree with the learned trial judge to the extent of his reversal of the referee, though we do not see how his affirmance of any part, of the referee's ruling can be sustained. If the change from a single machine producing double circuit connectors to the two machines producing single circuit connectors constituted an alteration within the meaning of the statute, it ought to follow that the introduction of machines to enable the owner to produce articles, instead of purchasing them, and for the purpose of reducing the cost of his output, also amounted to a like alteration, since it involved a change in the manufactory. The test in each instance is whether the thing done was "altering  *  *  *  a  *  *  *  manufactory." The means adopted in both instances was the installation of machinery and for the purpose of producing something which the owner was not in either instance manufacturing before. True, the single circuit connector replaced the double circuit connector, and the other articles produced replaced the purchased articles; but the manufactory had to undergo an alteration before either could be done. The manufactory is the thing here to be kept in mind; it had to be put into a changed condition; literally and practically, then, it was not thereafter the same manufactory as it was before, no matter which of the changes wrought may be considered. Stated otherwise, if the introduction of machinery to manufacture articles previously acquired through purchase was an addition, and not an alteration, then, since two wire-feed screw machines were introduced for the purpose of turning out a new and distinct product, while only one machine was removed, it is not easy to understand why, upon this theory of addition, at least one of these new machines should not also have been treated as an addition.

As it seems to us, however, this interpretation would be opposed to the apparent statutory object of employing the word "altering" as a token for the allowance of a lien. This object reaches the manufactory as the unit to consider, and not simply some of the machines there possessed and used. True, the bankrupt did not occupy an entire building; he was, however, a lessee in the possession and enjoyment of a distinct portion of a building which had been specially designed and constructed for separate manufactories; and his entire equipment for turning out his manufactured product was being rightfully maintained and used within this portion of the building. The unitary character, then, of such a manufactory, necessarily includes such interest in the building as the lessee may in fact have, together with the entire equipment and his right to maintain, change, and operate it within the portion of the structure leased. Schott v. Harvey, 105 Pa. 222, 227, 228, 51 Am. Rep. 201; Wells v. Christian, 165 Ind. 662, 664, 665, 76 N. E. 518. Still it is not meant to say that every article used in a manufactory can be made the subject of a mechanic's lien. The language of the statute is specific as to the subjects of the

lien, though it is comprehensive in prescribing conditions for allowance of the lien. We have an example here in respect of "machinery," which apparently entered integrally into the mechanism required for the manufacturing operation. The statute embraces machinery furnished "for erecting, altering, repairing or removing a * * * manufactory." Certainly it was not necessary to employ more words, or words more apt, in order to disclose the legislative purpose.

[2] Such an act in its essence and intent is remedial, and is to be liberally construed. Bullock v. Horn, 44 Ohio St. 420, syl. 1 and page 424, 7 N. E. 737; Vernon v. Harper, 79 Ohio St. 181, 187, 86 N. E. 882, 20 L. R. A. (N. S.) 44; Central Trust Co. v. Leuders & Co. (decided by this court March 2, 1915) 221 Fed. 829, 137 C. C. A. 387. It consequently will not admit of refined distinctions which would include part of this machinery as an "alteration," and exclude part as an "addition"; for that would be to ignore the prescribed token for allowance of the lien—the changed condition of the manufactory.[2] These views derive support, we think, from other parts of the statute and some of the decisions.

[3] We may therefore turn to the contention, which is made so earnestly on behalf of the trustee, that, as respects the lien claimed, none of this machinery falls within the language and intent of the statute. The argument is that the lien of a mechanic or materialman is one that can be had only for enhancing the value of the premises, and so must be upon something that becomes part of the realty, like a fixture, and not upon machinery which, as here, is intended to be retained as personalty. We have seen that the statute at least in terms applies to machinery and provides for a lien:

"Every person who * * * furnishes machinery * * * for * * * altering * * * a * * * manufactory, * * * by virtue of a contract * * * with the * * * lessee of any interest in real estate * * * shall have a lien to secure payment thereof * * * * upon the * * * machinery so furnished. * * * *"

It might be added that the lien so given is also expressly extended to the leasehold interest, as the statute in part quoted in the margin at an earlier portion of this opinion shows; but in view of the stipulation of the parties it is to be presumed that there was in this instance no value of importance in the leasehold, for nothing is claimed in that behalf; still this feature of the statute is not to be overlooked in determining the validity of the lien. It hardly seems necessary to discuss the facts admitted and before pointed out, nor a statute containing language as plain as this, in order to show the intent either of the parties or of the statute; such intent cannot be made plainer by argument.

[4] The rule is settled, of course, that the federal courts would be bound by any construction which the Supreme Court of Ohio might have placed upon this statute or any earlier statute substantially like

[2] Under statutes involving interpretation of the words "addition" and "alteration," rulings have been made upon facts which would require the introduction of these machines to be regarded as an alteration. Updike v. Skillman, 27 N. J. Law, 131, 132, 133; Kosidowski v. Milwaukee, 152 Wis. 223, 226, 139 N. W. 187.

it. There are many decisions of that court construing statutes creating liens in favor of mechanics and materialmen, but we find no such decision construing these particular statutory provisions. However, in Hart v. Globe Iron Works, 37 Ohio St. 75, a controversy was presented concerning a mechanic's lien which was perfected and enforced under circumstances kindred to those here involved. The syllabus, which according to the rule there maintained was sanctioned by the court, reads:

"Under an agreement with one engaged in manufacturing on premises of which he had a lease for two years, a mechanic furnished and attached to the manufactory certain machinery to be used in the prosecution of the business, after which the tenant made a general assignment of his property for the benefit of his creditors. *Held*, that this did not interfere with the right of the mechanic to perfect a mechanic's lien under the act of 1843 (1 S. & C. 833), and that the lien will extend to such machinery."

It was contended there, as it is here, that a mechanic's lien could not be obtained on personal property. This was equivalent to saying that the lien could not be asserted against a chattel interest like a leasehold for two years; but the ruling was that machinery attached to the building on the leased premises "became so much a part of the leasehold that the mechanic's lien will extend to the machinery." The tenant had the right to remove the fixtures, yet this was regarded as immaterial. In closing the opinion Judge Okey said (37 Ohio St. 77):

"Nor are the rights of the parties affected by the fact that the interest of the tenant in the building and ground was not sold by the assignee, being considered of no value. The things which, by being annexed to the building, had become an appurtenance of the leasehold, and a part thereof for the purposes of such lien, were sold, and the mechanic was entitled to payment of his judgment out of the fund arising from such sale."

Some other matters more or less affected by that decision are deserving of special attention here. The statute there construed was in some material respects the basis of the present mechanic's lien law (1 S. & C. 833). The act was carried into the revision of the Ohio statutes in 1880 under sectional numbers 3184–3206 (1 Ohio Rev. Stat. [Ed. 1880] pp. 825, 830); and the present section 8308 of the General Code is but an expansion of section 3184—that is, additional objects have been included in the section. Neither the act construed in the Hart Case, nor section 3184 as it stood at the date of the decision, in terms fastened the lien on machinery or upon a leasehold interest; and yet the court allowed the lien against the machinery, in spite of the fact that the purchaser of the machinery had no interest in the land, except through a lease for a term of two years, and without value. On April 15, 1889, section 3184 was amended so as to fix the lien directly upon machinery, as well as upon the interest of the landowner, though not upon a leasehold interest (86 O. L. 373). In 1892 the lien was extended to leasehold interests (89 O. L. 373); and although amendments have since been made, the provisions fixing the lien upon machinery, as well as upon leasehold interests, have been preserved. The purpose of this course of legislation is unmistakable; it was, so far as the case under review requires consideration, to enlarge the rights of persons furnishing machinery

for altering a manufactory. In view, then, of this legislation, we regard the Hart decision as in principle decisive of the question of the right to have and enforce such a lien.

The decision in Mutual Aid Building & Loan Co. v. Gashe, 56 Ohio St. 273, 46 N. E. 985, when considered in connection with the decisions below, shows that the court was not disturbed about the power to allow a mechanic's lien upon personalty, although, as far as the present question is concerned, virtually the same argument that was made by counsel there is urged here. The questions arose upon a proceeding instituted by Gashe, as assignee of an insolvent corporation, for the sale of real estate and an adjustment of liens. The property was sold and the rights of the lienors were transferred to the sales proceeds. Among other liens there were three mechanics' liens, but the facts are not sufficiently reported as to the nature of the articles furnished by the lienors to justify allusion to more than one of them. A copartnership, Arbuckle, Ryan & Co., had furnished to the corporation an engine, boiler, and pump, with heater and stone for the engine and the necessary fittings and connections, and had taken a mechanic's lien upon the company's land and the improvements thereon, to secure payment. Subsequently the copartnership entered into a written agreement with the Mutual Aid Building & Loan Company, a mortgagee of the insolvent corporation, waiving priority of the mechanic's lien on the real estate, but not upon the boiler, engine, pump, heater, etc., which, through further provision, "were not to become realty until paid for." The mechanic's lien, subject to the waiver, was sustained in the common pleas court, and the proceeds arising from the sale of the articles were ordered by that court to be paid to Arbuckle, Ryan & Co. Gashe v. Ohio Lumber Co., 5 Ohio Dec. 130, 136. This was affirmed by the circuit court (Mutual Aid Building & Loan Co. v. Gashe, 18 Ohio Cir. Ct. R. 681, 685); and although the decree below was in one respect, not material here, modified by the Supreme Court, it was said in the opinion (against contention that a mechanic's lien could be allowed only for material which becomes part of the realty) that subject to this modification the "court concurs in the order in which the courts below distributed the funds in controversy" (56 Ohio St. at page 295), and further that the funds arising from the sale of the boiler, engine, etc., furnished by Arbuckle, Ryan & Co. "were properly applied to the payment of the lien, of that company" (56 Ohio St. 301).

In Pflueger v. Lewis Foundry & Machine Co., 134 Fed. 28, 67 C. C. A. 102, this court had occasion to consider the Ohio mechanic's lien act in substantially its present form, and portions of its interpretation of the act are quite apposite here. The court did not find it necessary, it is true, to place its decision upon the analysis thus alluded to; and still these features of the opinion are so in accord with our views of the statute, and the Ohio decisions there cited, that we quote the following pertinent and material parts. Said Judge Severens (134 Fed. 30):

"It would seem, as a matter of first impression, that the Legislature of Ohio did not intend by section 3184 to prescribe, as a test for the application of its

enactment, the question whether the thing furnished is something intended to become a fixture, and will be such when placed in the intended location and relation to the mill or manufactory. The statute makes a distinction between the mill or manufactory and the real estate and the machinery furnished by the lienor. If the machinery furnished becomes a fixture, there was no need to expressly declare that the lien should extend to it. The Ohio Supreme Court holds that the lien given by this statute arises when it is furnished, and it is not postponed until it is put in its place in the mill (Beckel v. Petticrew, 6 Ohio St. 247)—a conclusion wholly inconsistent with the idea that the lien attaches only when the machine or other thing is parcel of the realty, for nothing becomes a fixture until it is affixed. It was held by the Circuit Court of Appeals for the Fifth Circuit, affirming the decision of Judge Newman (In re Georgia Handle Co., 109 Fed. 632, 48 C. C. A. 571), that, under the statute of Georgia, which gives a lien upon the 'factory' to those furnishing materials or machinery for such factory, it was immaterial whether the machinery therein should be considered real or personal property. In either case it was subject to the lien. The record failed to show how the machinery was attached to the building. But it was held sufficient that it showed there was such attachment as was necessary to its operation."

The decisions of courts of the various states, construing their respective mechanic's lien acts, are necessarily affected by the particular provisions of the statutes involved; and such decisions can be safely accepted only upon comparison of the statutes there construed with the statute under consideration. Our attention has not been called to any further decisions in which a statute like the one now under review was involved, though, as illustrative of the trend of some of the decisions cited, we refer to Canton Roll & Machine Co. v. Rolling Machine Co., 168 Fed. 464, 468, 469, 93 C. C. A. 621 (C. C. A. 4th Cir.), where the lien was enforced against objects not specifically named in the statute.

[5] Upon the whole, we do not see any sufficient reason for denying enforcement of the lien in the present case. The statutory provisions involved do not purport to authorize the taking of a lien upon any property except through the assent, express or implied, of its owner. Gashe Case, 56 Ohio St. at page 296. Here, the parties in interest agreed that the machines should "not become affixed to the realty in the sense of permanent fixtures forming part of the freehold," but that they should remain "personal property." [3] There is nothing in the statute expressly requiring the lien to be taken both upon the machinery supplied and the interest of the purchaser in the realty, since, as we have seen,

[3] The validity of this agreement is not questioned; and the rule is that it is competent for the parties in interest so to agree with respect to machines of this character and attached as they were to the building. Teaff v. Hewitt, 1 Ohio St. 511, 534, 542, 543, 59 Am. Dec. 634; Fortman v. Goepper, 14 Ohio St. 558, syl. 3, and page 564; Tifft v. Horton, 53 N. Y. 377, 380, 13 Am. Rep. 537; Schumacher v. Edward P. Allis Co., 70 Ill. App. 556, 565, and citations; Arlington Mill & Elevator Co. v. Yates, 57 Neb. 286, 292, 77 N. W. 677; Landigan v. Mayer, 32 Or. 245, 250, 51 Pac. 649, 67 Am. St. Rep. 521; St. Joseph Hydraulic Co. v. Wilson, 133 Ind. 465, 470, 33 N. E. 113; Wheeler v. Bedell, 40 Mich. 693. The agreement was well within the principle declared in Teaff v. Hewitt, 1 Ohio St. at page 534: "An article attached to the land may be a fixture or a chattel according to the special agreement of the parties." Indeed, where the parties so agree, the principle is applicable to buildings. Long v. White, 42 Ohio St. 59, 61; Kinkead v. United States, 150 U. S. 483, 491, 14 Sup. Ct. 172, 37 L. Ed. 1152, and citations.

the act in terms authorizes the lien to be taken on the "machinery so furnished." True the relation of the purchaser to the manufactory as its lessee is a condition which, under the statute, extends the lien to the leasehold interest; but this neither prevents the lessee and lessor from agreeing that the machinery shall not become a fixture, nor deprives the person furnishing the machinery (pursuant to contract) of the right to take the lien. As Judge Okey said in the Hart Case:

"Here the agreement was that the tenant should have the right, at the expiration of or during the term, to remove such fixtures, but this did not affect the mechanic's rights."

And we have seen that the right to make such an agreement and enforce the lien accordingly, was in effect sanctioned in the Gashe Case. No one was concerned in the present instance except those persons whose property rights were involved and whose consent to the arrangement was given; and the case does not present any question of conflicting liens. What reason, then, has the present trustee to complain? It cannot be because of any value in the bankrupt's interest in the realty as lessee, nor of any failure of the bankrupt to provide against the right of the lessor to acquire an interest in the machinery as a fixture. Further, the bankrupt's estate is not being diminished through the enforcement of the lien, for the bankrupt never acquired any interest in the machinery, except subject to the express statutory right of lien; and even if the leasehold interest on its merits ever had any value, in excess of the burden of the rents reserved, such value is not claimed by the lienor in this proceeding.

It results that, since the lien was denied as to a portion of the machinery, the decree must be reversed, with costs of both appeals in favor of the Kinsey Company, and the cause is remanded, with direction to enter a decree sustaining the lien entire and allowing recovery accordingly.